## STATE OF CONNECTICUT *v.* RICARDO MONTANEZ (13750)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued March 26—decision released May 28, 1991

*Patricia A. King,* special public defender, with whom, on the brief, was *William F. Gallagher,* special public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Brown,* state's attorney, and *Robert A. Lacobelle,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant, Ricardo Montanez, appeals from the judgment of conviction, after a jury trial, of murder in violation of General Statutes § 53a-54a (a).[1] He claims that the trial court improperly: (1) denied his motion for judgment of acquittal because the evidence was insufficient to prove beyond a reasonable doubt that he intended to kill the vic-

---

[1] General Statutes § 53a-54a (a) provides: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

tim; (2) refused to charge the jury on the lesser included offense of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1);[2] and (3) admitted a prior consistent statement of a witness for the state. We affirm the judgment.

The jury reasonably could have found the following facts. The victim, William McDougall, who lived in Fairfield, drove into Bridgeport in an attempt to retrieve money for a friend who had been cheated in a drug transaction. McDougall arrived at Clinton Avenue, where a group of people were standing in the street. McDougall backed his car into the group, knocking down one person who was on a bicycle, and then drove down the street, hitting a telephone pole at the corner of Clinton Avenue and Railroad Avenue. Four of the people in the group, including James Brown and Ilideo Leite, ran after McDougall, who had exited his car and was walking away. The four caught McDougall and beat him with a pipe until he fell to the ground.

As Brown turned and walked away, the defendant ran by him with a gun in his hand. The defendant ran to a point approximately two feet from where McDougall was lying on the ground, and fired two shots at McDougall in rapid succession, one of which hit him in the right leg. The defendant then stopped Leite, who had started to run away, and handed him the gun. Leite went to the defendant's house, and, when the defendant arrived there, Leite returned the gun to him and left. Although the gun was never recovered, two shell casings were found at the scene. McDougall died later that day in the hospital, after suffering a massive loss of blood. The cause of death was the gunshot wound

---

[2] General Statutes § 53a-56 (a) (1) provides: "MANSLAUGHTER IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person . . . ."

to his right leg, which had nearly severed his right femoral artery, the main artery for carrying blood to the lower leg and foot.

The defendant first claims that the evidence was insufficient to establish that he had acted "with intent to cause the death of" McDougall, as required by General Statutes § 53a-54a (a). He argues that Brown and Leite, who were the only witnesses to the shooting, "gave widely divergent and incomplete testimony" regarding the defendant's conduct, and that neither version "provide[d] evidence sufficient to support only one reasonable finding—that the defendant specifically intended to cause McDougall's death . . . ." This argument is without merit.

The principal difference between the testimony of Brown and that of Leite concerns the distance between the defendant and McDougall at the time of the shooting. Brown testified that the distance was two to three feet, while Leite estimated that the distance was approximately thirty feet. Because we conclude that the jury reasonably could have inferred intent to cause death from Brown's testimony alone, we need not discuss Leite's testimony as part of this analysis.[3]

The two-part test for appellate analysis of a claim of evidentiary insufficiency is well established. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. *State* v. *Allen*, 216 Conn. 367, 380, 579 A.2d 1066 (1990). It is immaterial to the probative force of the evidence that

---

[3] Leite's testimony is significant, however, in the analysis of the defendant's second claim, discussed infra.

it consists, in whole or in part, of circumstantial rather than direct evidence. Id., 381. Furthermore, in determining whether the jury reasonably could have found guilt, we ask whether any rational factfinder could have done so. *State* v. *Chace,* 199 Conn. 102, 105, 505 A.2d 712 (1986).

"In order to be convicted under our murder statute, the defendant must possess the specific 'intent to cause the death' of the victim. General Statutes § 53a-54a. To act intentionally, the defendant must have had the conscious objective to cause the death of the victim. General Statutes § 53a-3 (11) . . . ." *State* v. *Carpenter,* 214 Conn. 77, 82, 570 A.2d 203 (1990). Ordinarily, intent can only be proved by circumstantial evidence; it may be and usually is inferred from the defendant's conduct. Id. Intent to cause death may be inferred from "the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death." *State* v. *Zdanis,* 182 Conn. 388, 396, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981); see also *State* v. *Carpenter,* supra, 82–83. Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct. *State* v. *Amarillo,* 198 Conn. 285, 300–304, 503 A.2d 146 (1986).

Brown testified that he saw the defendant in a parked car on Clinton Avenue just before McDougall backed up his car into the group of people. He also testified that he saw the defendant, gun in hand, run toward McDougall and, from two to three feet away, fire two shots in rapid succession at him as he lay motionless on the ground. The medical examiner testified that most people with the type of injury suffered by McDougall do not live long enough to get to a hospital. Based on this evidence, the jury reasonably could have con-

cluded beyond a reasonable doubt that the defendant intended to cause McDougall's death.

The defendant's argument rests on the assertion that he hit McDougall with only one of his two shots, and that McDougall was hit in the thigh rather than "in a vital area." The defendant claims that those facts preclude an inference that he "specifically intended to cause McDougall's death, rather than injure or frighten him." We disagree. While it would have been permissible to infer from those facts that the defendant intended only to injure or frighten McDougall,[4] the evidence did not preclude the equally permissible inference that the defendant intended to kill the victim by shooting at him twice as he lay on the ground two feet away.

The defendant next claims that the trial court improperly refused his request to charge the jury on the lesser included offense of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1).[5] We are not persuaded.

This claim focuses on the third and fourth requirements of the well established *Whistnant* test for determining whether a defendant is entitled to a lesser included offense instruction.[6] *State* v. *Whistnant*, 179

---

[4] Because such an inference was permissible, the trial court properly charged the jury on the lesser included offenses of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) and of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), both of which require proof of intent to cause serious physical injury.

[5] See footnote 2, supra, for the full text of General Statutes § 53a-56 (a) (1). As noted above; see footnote 4, supra; the court instructed the jury on the lesser included offenses of manslaughter in the first degree under General Statutes § 53a-55 (a) (1) and assault in the first degree under General Statutes § 53a-59 (a) (1).

[6] There is no dispute that the defendant met the first two *Whistnant* requirements, as clarified by *State* v. *Jacobs*, 194 Conn. 119, 128 n.4, 479 A.2d 226 (1984), cert. denied, 469 U.S. 1190, 105 S. Ct. 963, 83 L. Ed. 2d

Conn. 576, 588, 427 A.2d 414 (1980). Those require-
ments are that "(3) there is some evidence, introduced
by either the state or the defendant, or by a combina-
tion of their proofs, which justifies conviction of the
lesser offense; and (4) the proof on the element or ele-
ments which differentiate the lesser offense from the
offense charged is sufficiently in dispute to permit the
jury consistently to find the defendant innocent of the
greater offense, but guilty of the lesser." Id.

Manslaughter in the second degree under § 53a-56 (a)
requires that a defendant "recklessly [cause] the death
of another person." A person acts "recklessly" with
respect to a particular result "when he is aware of and
consciously disregards a substantial and unjustifiable
risk that such result will occur . . . ." General Stat-
utes § 53a-3 (13). In this case, the differentiating ele-
ment between murder and manslaughter in the second
degree was the defendant's state of mind, namely,
whether he intentionally killed McDougall or recklessly
caused his death. "Reckless conduct is not intentional
conduct because one who acts recklessly does not have
a conscious objective to cause a particular result." *State*
v. *Beccia*, 199 Conn. 1, 4, 505 A.2d 683 (1986). Under
the facts presented, therefore, in order for the defend-
ant to have been entitled to the lesser included charge
he requested, the evidence bearing on his state of mind
must have been such that the jury reasonably could
have found that he acted recklessly, rather than inten-
tionally, with respect to McDougall's death.

In determining whether the defendant was entitled
to a lesser included offense charge, we view the evi-
dence "in a light most favorable to the defendant's

---

968 (1985), namely, that (1) he requested an appropriate instruction, and (2)
it was not possible to commit the greater offense in the manner stated in
the information without first committing the lesser. *State* v. *Whistnant,*
179 Conn. 576, 588, 427 A.2d 414 (1980).

request." *State* v. *Herring,* 210 Conn. 78, 106, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). Evidence is " 'sufficiently in dispute' where it is of such a factual quality that would permit the finder of fact reasonably to find the defendant guilty on the lesser included offense. This requirement serves to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal." *State* v. *Manley,* 195 Conn. 567, 579, 489 A.2d 1024 (1985), quoting *State* v. *Whistnant,* supra. Nonetheless, jurors " 'are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence . . . from which inferences can fairly be drawn.' " *State* v. *Manley,* supra, quoting *Schultz* v. *Pennsylvania R. Co.,* 350 U.S. 523, 526, 76 S. Ct. 608, 100 L. Ed. 668 (1956). They should not be encouraged to engage in speculation. *State* v. *Manley,* supra, 580.

The defendant relies on the following evidence to support his assertion that the jury reasonably could have concluded that the defendant acted recklessly, rather than intentionally, with respect to McDougall's death. Leite testified that, after beating McDougall, he was walking back toward Clinton Avenue when he heard a shot. He turned around and saw the defendant approximately thirty feet away from McDougall, who was lying on the ground. After Leite had turned around, he heard another shot and saw the defendant holding a gun with two hands in front of his body, pointing it at McDougall.[7] In addition, Leite had given two

[7] The defendant also argues that "[t]here is some testimony that there may have been other people in the immediate area of the victim." Thus, he attempts to argue that the jury could have found recklessness based on his conduct with respect to those other people. We reject this argument, for two reasons. First, as the state points out, there is no such testimony in this record. Second, even if the defendant had acted recklessly with

written statements to the police. In the first statement, contrary to his testimony at trial, he stated that he was not sure who had fired the shots. The defendant also relies on testimony that the two shells from the shots fired by the defendant were found approximately four feet from each other, giving rise to an inference that the defendant "was not standing in the same place when he fired both shots at McDougall."

We conclude that, taking all this evidence in the light most favorable to the defendant, the jury could not reasonably have concluded that the defendant acted recklessly, rather than intentionally, with respect to McDougall's death. Common sense and common understanding would preclude the conclusion that the defendant acted recklessly when he shot at the victim twice from a distance of thirty feet and when the second shot was fired from the classic firing position of holding his arms out in front of his body. Based on this evidence, an inference of reckless rather than intentional conduct would have been the result of speculation. The only question could have been whether his intent was to kill or to cause serious physical injury, and the trial court adequately protected his rights by appropriately charging on the other lesser included offenses. See footnote 4, supra.

The defendant's final claim is that the trial court improperly admitted into evidence a written statement of Leite as a prior consistent statement. We disagree.

respect to others by shooting intentionally at McDougall, that would not justify a finding that he acted recklessly with respect to McDougall. General Statutes § 53a-3 (13) provides in pertinent part that "[a] person acts 'recklessly' *with respect to a result or to a circumstance described by a statute defining an offense* when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists." (Emphasis added.) The result described by the manslaughter statute is the death of the victim. Thus, what may have been reckless conduct "with respect to" other results or circumstances would not ipso facto be reckless conduct "with respect to" that result.

On direct examination, Leite testified that, as he was walking away from McDougall, he had heard a shot, had turned around, and then had seen the defendant fire the second shot at McDougall. On cross-examination, the defendant introduced, as a prior inconsistent statement, a portion of a written statement that Leite had given to the police in which he stated that "I am not sure who fired the shots but [the defendant] had this gun, it was a black 45 automatic." On redirect examination, the state offered a second written statement of Leite, given right after the first, in which he stated that his first statement was not "the complete truth," and that he had seen the defendant fire the gun twice at McDougall.

The defendant objected to the admission of the second statement, claiming that it was not a prior consistent statement. The court overruled the objection and admitted the second statement, and the defendant excepted. Thereafter, the court stated that, since both the first and second statements were in writing and signed by Leite, they were also admissible under *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).[8]

The defendant's argument that the second statement was not truly consistent with Leite's testimony on direct examination and, therefore, was not admissible as a prior consistent statement misses the mark. In *Whelan,* we "adopt[ed] . . . a rule allowing the sub-

---

[8] The court stated: "And as long as we're citing cases. In line with *State* v. *Whelan* in 200 Conn. [743, 513 A.2d 86, cert. denied, 479 U.S 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986)], both the first statement and the second statement were in writing and signed by the maker of the statement, so that I believe they come in without any further instructions by me as to limitation. Any disagreement with that?" The defendant did not register any such disagreement.

stantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination." Id., 753. The rationale for that rule is that its requirements—that the declarant testify and be subject to cross-examination, that he have personal knowledge of the facts stated, and that the statement be in writing and signed by him—justified "an exception to the hearsay rule . . . to allow the trial court to admit for substantive purposes prior inconsistent statements given under prescribed circumstances reasonably assuring reliability." Id., 752.

Under the circumstances, therefore, the second written statement was admissible whether it was consistent or inconsistent with Leite's testimony. If it were consistent therewith, as initially determined by the trial court, it was admissible as a prior consistent statement. If, on the other hand, it were inconsistent therewith, as the defendant implicitly argues, it was admissible under *Whelan.*[9]

The defendant argues, however, that *Whelan* states a rule of *use* of testimony, rather than *admissibility*. Thus, he asserts, *Whelan* merely permits the use of a written statement of a witness as substantive evidence, but the statement first must be admitted under some other rule of admissibility. This argument misreads *Whelan.*

It is true that the precise procedural posture of *Whelan* involved only the use, rather than the admissibil-

---

[9] In view of this conclusion, we need not consider whether the trial court was correct in its reading of *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); see footnote 8, supra; that a signed, written statement of a witness is admissible, at the behest of the party who called the witness, irrespective of whether it is inconsistent or consistent with his testimony on direct examination.

ity, of a prior inconsistent statement of a witness as substantive evidence. In *Whelan,* the statement had been admitted into evidence in order to impeach a hostile witness. Id., 746–47. The defendant thereafter requested that the trial court instruct the jury that the statement could "be considered solely with respect to the credibility of the witness, and not as probative of the facts it contained." Id., 748. On appeal, we rejected that limitation on its use, and "adopt[ed] . . . a rule allowing the substantive use of prior written inconsistent statements signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination." Id., 753.

Contrary to the defendant's argument, however, our rationale for the rule adopted in *Whelan* went beyond mere use to admissibility. As noted above, that rationale is premised on the notion that the contours of the rule justify an exception to the hearsay rule "to allow the trial court *to admit for substantive purposes* prior inconsistent statements given under prescribed circumstances reasonably assuring reliability." (Emphasis added.) Id., 752. It is clear, moreover, that in *Whelan* we considered the concept of the "use" of such statements as equivalent to their "admissibility." See id., 752–53. Therefore, in *Whelan* we announced a new exception to the hearsay rule for the admission of prior inconsistent written statements of a witness, not simply a new rule concerning the use of such statements that must be shown to have been admissible on some other, independent basis.

The judgment is affirmed.

In this opinion the other justices concurred.