## STATE OF CONNECTICUT *v.* JOHN PRESTON
## (SC 15814)

Callahan, C. J., and Borden, Berdon, Norcott and Peters, Js.

Argued December 1, 1998—officially released April 27, 1999

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's

attorney, and *John F. Blawie*, assistant state's attorney, for the appellant (state).

*Susan M. Hankins*, assistant public defender, for the appellee (defendant).

*Opinion*

CALLAHAN, C. J. The defendant, John Preston, was charged in a substitute information with robbery in the first degree in violation of General Statutes § 53a-134.[1] Following a jury trial, the defendant was convicted of the lesser included offense of robbery in the third degree in violation of General Statutes § 53a-136.[2] Thereafter, he was sentenced to a term of imprisonment of five years.

The defendant subsequently appealed to the Appellate Court claiming, inter alia, that the trial court had failed to instruct the jury on the lesser included offense of larceny in the sixth degree as defined by General Statutes § 53a-125b.[3] The Appellate Court concluded

---

[1] General Statutes § 53a-134 provides in relevant part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . . Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime. . . ."

General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[2] General Statutes § 53a-136 (a) provides: "A person is guilty of robbery in the third degree when he commits robbery as defined in section 53a-133."

[3] General Statutes § 53a-125b (a) provides: "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a-119

that "the issue of force was sufficiently in dispute to require the trial court to instruct on the lesser included offense of larceny in the sixth degree," reversed the defendant's conviction and ordered a new trial. *State* v. *Preston*, 46 Conn. App. 778, 785, 700 A.2d 1190 (1997). We granted certification limited to the following issue: "Did the Appellate Court properly conclude that, under the evidence in this case, the third and fourth prongs of *State* v. *Whistnant*, 179 Conn. 576, 588 [427 A.2d 414] (1980), were satisfied, in that the trial court was required to give a charge on the lesser included offense of larceny in the sixth degree?" *State* v. *Preston*, 243 Conn. 946, 704 A.2d 800 (1997).

The details of the incident that led to the defendant's conviction are set forth in the opinion of the Appellate Court; *State* v. *Preston*, supra, 46 Conn. App. 779–80; and may be summarized as follows. On March 19, 1994, the defendant entered Milk Plus, a convenience store located in Fairfield. A customer of the store noticed the defendant conceal several packs of cigarettes under his shirt. The customer alerted the cashier, Karem Shaham, to the defendant's actions, at which point Shaham also observed the defendant's conduct. When the defendant then attempted to leave the store without paying

and the value of the property or service is two hundred fifty dollars or less."

General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . . .

"(9) Shoplifting. A person is guilty of shoplifting who intentionally takes possession of any goods, wares or merchandise offered or exposed for sale by any store or other mercantile establishment with the intention of converting the same to his own use, without paying the purchase price thereof. A person intentionally concealing unpurchased goods or merchandise of any store or other mercantile establishment, either on the premises or outside the premises of such store, shall be prima facie presumed to have so concealed such article with the intention of converting the same to his own use without paying the purchase price thereof. . . ."

for the cigarettes, Shaham jumped over the counter and attempted to detain the defendant. A struggle ensued, during which Shaham ripped the defendant's shirt, and several packs of cigarettes fell to the floor. When he tore the defendant's shirt, Shaham noticed that the defendant also had three bottles of liquor concealed on his person. Suspecting that the liquor had been taken from an affiliated, neighboring store, Grasmere Liquor Store,[4] Shaham seized one of the bottles and put it on the counter. Id.

The struggle between Shaham and the defendant continued into the parking lot. In the course of the struggle, Shaham attempted to recover another liquor bottle from the defendant. The defendant, however, wrested the bottle from Shaham and held it over Shaham's head as if to strike him. The defendant then escaped into a car that was waiting for him in the parking lot. Thereafter, Shaham entered Grasmere Liquor Store and confirmed that three bottles of liquor, identical to those he had observed in the defendant's possession, were missing from the liquor store.[5] Id., 780.

At trial, the defendant's primary theory of defense was that he had not been at Milk Plus when the crime was committed and, thus, was not the perpetrator of the crime. Nevertheless, he requested that the court instruct the jury on the lesser included crimes of robbery in the third degree and larceny in the sixth degree.

---

[4] Shaham's father owned both Grasmere Liquor Store and Milk Plus.

[5] At trial, the defendant elicited evidence that the price sticker on a bottle of liquor taken from the defendant during the struggle was different from the price listed in the police report as the retail price charged by Grasmere Liquor Store for that particular liquor. Viewed in the light most favorable to the defendant, that evidence reasonably could have supported a finding that the bottle of liquor recovered from the defendant was not necessarily stolen from Grasmere Liquor Store. Consequently, the sole basis we will consider in determining whether the trial court properly denied the defendant's request for an instruction on larceny in the sixth degree is whether the jury reasonably could have determined that the taking of the cigarettes from Milk Plus constituted a larceny rather than a robbery.

In support of his contention that he was entitled to an instruction on larceny in the sixth degree, the defendant, in his request to charge, maintained for the first time that the jury reasonably could find that "no force was used and that no robbery took place but that items valued less than $100 were taken." The trial court granted the defendant's request with respect to robbery in the third degree but denied the defendant's request for an instruction on larceny in the sixth degree.

The Appellate Court, however, concluded that the evidence entitled the defendant to an instruction on larceny and, therefore, reversed the trial court's decision. Id., 785. In this appeal, the state maintains that the Appellate Court improperly reversed the trial court's decision not to charge on larceny because there was insufficient controverted evidence to support the defendant's request for that charge. We agree with the state.

We previously have articulated a four-pronged test for determining whether a defendant is entitled to an instruction on a lesser included offense. *State* v. *Whistnant*, supra, 179 Conn. 588. "A defendant is entitled to an instruction on a lesser offense if, and only if . . . (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Internal quotation marks omitted.) *State* v. *Manley*, 195 Conn. 567, 574, 489 A.2d 1024 (1985); *State* v. *Whistnant*, supra, 588.

"In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra, 179 Conn. 588, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense." (Internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 260–61, 681 A.2d 922 (1996). "[T]he jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested." (Internal quotation marks omitted.) *State* v. *Rasmussen*, 225 Conn. 55, 68, 621 A.2d 728 (1993). "On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." (Internal quotation marks omitted.) *State* v. *Arena*, 235 Conn. 67, 74, 663 A.2d 972 (1995). "Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." (Internal quotation marks omitted.) *State* v. *Manley*, supra, 195 Conn. 575; *State* v. *Smith*, 185 Conn. 63, 78, 441 A.2d 84 (1981). These principles do not mean, however, that the evidence must be unrealistically parsed in contravention of how it was presented to and reasonably could have been perceived by the jury.

The focal question raised by the defendant's claim involves the fourth prong of the *Whistnant* test: whether the evidence of the element that differentiated the allegedly included offense of larceny from the greater offense of robbery was "sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Whistnant*, supra, 179 Conn. 588. We previously have stated that "[e]vidence [of the differentiating element] is ' "sufficiently in dispute" where it is of such a factual quality that would permit the finder of fact

reasonably to find the defendant guilty on the lesser included offense. This requirement serves to prevent a jury from *capriciously convicting on the lesser included offense* when the evidence requires either conviction on the greater offense or acquittal.' *State* v. *Manley*, [supra, 195 Conn. 579], quoting *State* v. *Whistnant*, supra [588]." (Emphasis added.) *State* v. *Montanez*, 219 Conn. 16, 23, 592 A.2d 149 (1991). Moreover, "the trial court, in making its determination whether the proof is 'sufficiently in dispute,' while it must carefully assess all the evidence whatever its source, is 'not required to put the case to the jury on a basis [of a lesser included offense] that essentially indulges and even encourages speculations as to [a] bizarre reconstruction [of the evidence].' *United States* v. *Sinclair*, 444 F.2d 888, 890 (D.C. Cir. 1971)." *State* v. *Manley*, supra, 579–80.

It is well established that the element differentiating robbery from larceny is the use or threatened immediate use of physical force. *State* v. *Tinsley*, 181 Conn. 388, 398, 435 A.2d 1002, cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981). Specifically, General Statutes § 53a-133, the statute that defines robbery, proscribes the use of physical force for: "(1) [p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." We previously have stated that "under General Statutes § 53a-133, if the use of force occurs during the continuous sequence of events surrounding the taking or attempted taking, even though some time immediately before or after, it is considered to be 'in the course of' the robbery or the attempted robbery within the meaning of the statute." *State* v. *Ghere*, 201 Conn. 289, 297, 513 A.2d 1226 (1986). In the present case, it is

undisputed that the defendant used physical force upon Shaham during the continuous sequence of events immediately following his taking of cigarettes from Milk Plus. The defendant, however, argues that the jury reasonably could have determined that the defendant used force upon Shaham without the necessary intent to retain the stolen property because he was no longer in possession of the stolen property, but instead was acting in self-defense or to effectuate escape. Therefore, the dispositive question in this appeal is whether the evidence relating to the defendant's intent in using force upon Shaham was "sufficiently in dispute," as required by the fourth prong of *Whistnant.*

The record reveals the following related to the defendant's use of force. The defendant entered Milk Plus and concealed several packs of cigarettes in his shirt. He then attempted to leave the store without paying for the cigarettes. Shaham confronted the defendant in front of the exit door, and the two men engaged in a struggle. It is undisputed that, at the time the two men began to struggle, the defendant was in possession of stolen cigarettes. In the course of the struggle, Shaham ripped the defendant's shirt, causing several packs of cigarettes to fall to the floor. The struggle continued, unbroken, into the parking lot, at which point the men exchanged blows.

The defendant maintains, however, that he was entitled to an instruction on larceny in the sixth degree because the jury reasonably could have found that his use of force upon Shaham was not for a purpose proscribed by § 53a-133. Specifically, the defendant argues that the jury reasonably could have determined that he was no longer in possession of the stolen cigarettes when he used force upon Shaham in the parking lot. Moreover, the defendant contends that, from that determination, the jury reasonably could have drawn the inference that the defendant was aware that he no

longer retained possession of the stolen cigarettes. Relying upon that inference, the defendant maintains that the jury reasonably could have drawn the further inference that, when the defendant fought with Shaham in the parking lot, the defendant's sole intent was either to escape or to defend himself, two uses of force not proscribed by § 53a-133. See *State* v. *Coston*, 182 Conn. 430, 435–36, 438 A.2d 701 (1980) (defendant not guilty of attempted robbery where he voluntarily relinquished stolen property and then used force solely to effectuate escape).

We conclude, however, that the evidence presented at trial does not support the inferences suggested by the defendant. Specifically, the defendant concedes that the evidence established that he was in possession of stolen cigarettes when he was initially engaged by Shaham, and that at no point did he voluntarily relinquish possession of the stolen cigarettes. His argument, therefore, relies on the premise that the jury reasonably could have determined that he had been *completely divested* of the stolen cigarettes *before* he pushed and struck Shaham during the course of the struggle. Even viewed in the light most favorable to the defendant, however, the evidence does not support such a finding.

At trial, the only testimony regarding the defendant's possession of stolen cigarettes during the course of the struggle was presented by Shaham. After Shaham unequivocally stated that the defendant was in possession of the stolen cigarettes when the defendant struck him outside the store, the prosecutor asked Shaham to identify several packages of cigarettes that the police had retrieved from the floor of the store, so that they could be admitted into evidence. At that point, the defendant's attorney conducted a voir dire in order to challenge the admissibility of the cigarettes. During that voir dire, Shaham provided the following testimony:

"[Defense Counsel:] Where were *these* cigarettes obtained from—retrieved from?

"[Shaham:] From the side of the counter.

"Q. Were they on the counter or on the floor?

"A. When the police retrieved them or I retrieved them?

"Q. When the police retrieved them?

"A. On the floor.

"Q. All *these* packages of cigarettes—

"A. When I ripped his shirt, everything fell on the floor.

"Q. All *these* cigarettes came out—off the floor?

"A. *Plus more cigarettes were in his shirt* . . . .

"Q. All *these* cigarettes came off the floor; is what you're saying?

"A. Yes." (Emphasis added.)

Significantly, the defendant made no attempt to challenge Shaham's testimony that additional cigarettes remained in the defendant's shirt. In the context in which it was elicited, Shaham's testimony clearly was to the effect that the cigarettes that the state sought to introduce had come from the floor of the store, but that additional cigarettes had remained in the defendant's possession. Shaham's testimony on voir dire reasonably could not have been interpreted to mean that, when the defendant's shirt was ripped, he was completely divested of stolen cigarettes. See *Decho* v. *Shutkin*, 144 Conn. 102, 106, 127 A.2d 618 (1956) (jury cannot " 'cull statements from the testimony . . . which in and of themselves are not complete but are dependent upon other testimony' "); *Snyder* v. *Pantaleo*, 143 Conn. 290,

295, 122 A.2d 21 (1956) (same). Moreover, on cross-examination, Shaham further stated: "I ripped his shirt open, that's how the cigarettes were all left on the floor. That's how *they all* got on the floor. *There were more cigarettes in his shirt, plus*—" (Emphasis added.) Here, too, the defendant did not challenge Shaham's testimony that "[t]here were more cigarettes in his shirt . . . ." Shaham's testimony, therefore, indicated that the cigarettes that had been introduced into evidence had been recovered from the floor of the store, but that the defendant remained in possession of stolen cigarettes.

Neither the state nor the defendant introduced any other evidence regarding the cigarettes. Consequently, the jury was not provided with any basis for concluding that the defendant possessed no stolen cigarettes when he fought with Shaham in the parking lot. The testimony that was introduced regarding the cigarettes, therefore, was not reasonably capable of supporting the inference that the defendant's use of force in the parking lot was intended *solely* for purposes of escape or self-defense, and not intended, at least in part, for purposes of retaining possession of the stolen cigarettes.

Finally, the defendant argues that, *even if* he was in possession of stolen cigarettes when he fought with Shaham, the jury reasonably could have found that the defendant's use of force was intended solely for purposes of escape or self-defense. "While this defendant, of course, was under no obligation to present evidence in his own behalf, we recognize as a practical matter that the defendant, for purposes of the *Whistnant* test, ought, in order to be entitled to a jury instruction on a lesser included offense, to endeavor to place a particular element of the crime 'sufficiently in dispute' under the fourth prong of *Whistnant*." *State* v. *Manley*, supra, 195 Conn. 578.

In the present case, there was no evidence or testimony of any kind before the jury that indicated that the defendant's use of force was intended solely for purposes of escape or self-defense. Consequently, the mere unsubstantiated possibility that the defendant's use of force was intended solely for purposes of escape or self-defense did not entitle the defendant to an instruction on the lesser included offense of larceny in the sixth degree. See, e.g., id., 579; *State* v. *Tinsley*, supra, 181 Conn. 398. Although the defendant undoubtedly was attempting to escape when he fought with Shaham in the parking lot, the conclusion that his use of force was motivated solely by that desire would be a mere guess, not a reasonable inference drawn from the evidence presented. See *State* v. *Manley*, supra, 195 Conn. 579–80 (trial court not required to put case to jury on basis of lesser included offense that indulges or encourages speculation).

We conclude, therefore, that the issue of whether the defendant's use of force was for a purpose proscribed by § 53a-133 was not "sufficiently in dispute," as required by the fourth prong of *Whistnant*. As a result, an instruction to the jury on the lesser included offense of larceny in the sixth degree was not justified.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion BORDEN, NORCOTT and PETERS, Js., concurred.

BERDON, J., dissenting. In my view, the trial court erred by declining to instruct the jury on the lesser included offense of larceny in the sixth degree.[1] Accordingly, I believe that the Appellate Court was correct to

---

[1] See footnote 3 of the majority opinion for the text of the relevant larceny statutes at issue in the present case.

order a new trial. *State* v. *Preston*, 46 Conn. App. 778, 788, 700 A.2d 1190 (1997).

In order to reach the contrary conclusion, the majority must ignore our well settled law pertaining to the accused's right to have the jury instructed on a lesser included offense. "[W]e view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. *State* v. *Montanez*, 219 Conn. 16, 22–23, 592 A.2d 149 (1991); *State* v. *Herring*, 210 Conn. 78, 106, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). [T]he jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence. . . . *State* v. *Rasmussen*, 225 Conn. 55, 68, 621 A.2d 728 (1993). On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense. *State* v. *Falby*, 187 Conn. 6, 30, 444 A.2d 213 (1982). *State* v. *Arena*, 235 Conn. 67, 73–74, 663 A.2d 972 (1995)." (Internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 261, 681 A.2d 922 (1996). In short, a conviction that follows a trial court's failure to deliver a lesser included offense charge must be reversed unless no rational jury, viewing the evidence in the light most favorable to the defendant, reasonably could have found that the defendant committed the lesser offense. This is perhaps the most lenient standard of review that exists in our law, and for good reason: the only consequence of a charge on a lesser included offense is that it permits the jury to resolve a factual issue, subject to all the procedural safeguards associated with verdicts based upon insufficient evidence. Although the

majority quotes the same words that I have quoted, it does not appear to understand what they mean.

The dispositive question in this appeal is whether, considering the evidence in the light most favorable to the defendant, the jury reasonably could have determined that the defendant neither used nor threatened to use physical force "for the purpose of . . . overcoming resistance . . . to the retention [of stolen property] immediately after the taking . . . ." General Statutes § 53a-133.[2] The Appellate Court answered this question in the affirmative. *State* v. *Preston*, supra, 46 Conn. App. 785. When viewed through the lens supplied by our exceedingly lenient standard of review, this conclusion is clearly correct.

First of all, the jury reasonably could have concluded that the defendant[3] did not possess any stolen property at the time that he used force. It is necessary to briefly summarize the relevant facts. The defendant entered a Milk Plus convenience store and stuffed several packs of cigarettes in his shirt. The clerk asked him if he had enough money to pay for the merchandise, and the defendant assured him that he did. Nevertheless, the clerk vaulted over the counter and ripped the defendant's shirt open, spilling the cigarettes to the floor. Although the clerk claimed that a number of packs of cigarettes remained in the defendant's shirt, this testimony was contradicted by that of William Revis, the person who drove the defendant to and from the Milk Plus.[4] Moreover, no cigarettes were recovered either from Revis' automobile or from the parking lot outside the Milk Plus, where the altercation relied upon by the

[2] See footnote 1 of the majority opinion for the complete text of § 53a-133.

[3] The defendant claimed mistaken identity, an issue that is not before us.

[4] Significantly, Revis testified *against* the defendant's alibi and—according to the defendant—had a motive to harm the defendant through his testimony. More specifically, the defendant testified that Revis was suspicious of the defendant's relationship with Revis' girlfriend.

state occurred. It was only *after* the cigarettes spilled to the floor that the defendant used any force.[5] Viewing this evidence in the light most favorable to the defendant's proposed jury instruction, the jury reasonably could have concluded that the defendant did not possess any stolen property at the time that he used force. Correlatively, the jury reasonably could have concluded that the defendant did not use force "for the purpose of . . . overcoming resistance . . . *to the retention [of stolen property]* . . . ."[6] (Emphasis added.) General Statutes § 53a-133.

Even if we were to assume arguendo that the defendant retained at least one pack of cigarettes in his shirt, the jury reasonably could have concluded that the defendant did not use force "for the purpose of" overcoming the clerk's resistance to this hypothetical theft. Significantly, it was the clerk who injected violence into the encounter by vaulting over the counter, attacking the defendant, and ripping open his shirt. Prior to this point, the defendant had employed no force; in fact, he had offered to pay for the cigarettes.[7] Viewing the

---

[5] According to the majority, "[i]t is undisputed that, at the time the two men began to struggle, the defendant was in possession of stolen cigarettes." This is not a fair characterization of the evidence, let alone one that views the testimony adduced at trial in the light most favorable to the defendant. To begin with, it is undisputed that the two men were not equally culpable for the use of force: the clerk threw the first punch by vaulting over the counter, attacking the defendant, and ripping open his shirt. Moreover, for the reasons explained in the body of this dissent, the jury reasonably could have concluded that all the cigarettes spilled to the floor before the defendant had used any force.

[6] The majority makes the curious argument that "the jury was not provided with any basis for concluding that the defendant possessed *no* stolen cigarettes when he fought with [the clerk] in the parking lot." (Emphasis added.) This statement betrays a misunderstanding of our standard of review. In fact, the more appropriate point to make is that the jury reasonably could have declined to credit the self-serving testimony of the clerk that the defendant possessed stolen property at the time that he used force.

[7] According to the majority, "it is undisputed that the defendant used physical force upon [the clerk] during the continuous sequence of events immediately following his taking of cigarettes from Milk Plus." This is untrue.

evidence in the light most favorable to the defendant, it is apparent that the jury reasonably could have concluded that the defendant's use of force was motivated solely by his desire to avoid both physical harm and apprehension by the police.[8]

The issues in the present case are irreducibly fact-bound. As such, they rest squarely within the province of the jury, the finder of fact in this case. Because I believe that the trial court usurped the role of the jury by refusing to allow it to consider a lesser included offense, I dissent.

W. v. W.*
(SC 15956)

Borden, Berdon, Norcott, Katz and Palmer, Js.

---

In my view, a jury reasonably could have concluded that the clerk's intervening acts of violence disrupted the continuity of what was supposed to have been a surreptitious shoplifting.

[8] An eyewitness corroborated this interpretation of the evidence by "testif[ying] that she saw [the clerk] grab the defendant and that she thought the defendant pushed [the clerk] away." State v. Preston, supra, 46 Conn. App. 784. Nevertheless, the majority claims that "there was no . . . testimony of any kind before the jury that indicated that the defendant's use of force was intended solely for purposes of escape or self-defense."

* Following oral argument in this court, we have ordered, sua sponte, the file to be sealed and have changed the name of the case to protect the privacy of the parties.