STATE OF CONNECTICUT *v.* LOUIS REED
(AC 17678)

O'Connell, C. J., and Vertefeuille and Stoughton, Js.

Argued October 26, 1999—officially released January 18, 2000

*Patricia Nielsen,* certified legal intern, with whom were *Susan M. Hankins,* assistant public defender, and, on the brief, *Jacqueline Katz-Austin,* certified legal intern, for the appellant (defendant).

*Nancy L. Chupak,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Robyn S. Johnson,* assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Louis Reed, appeals from the judgment of conviction, rendered after a jury trial, of larceny in the second degree in violation of General Statutes § 53a-123 (a) (3).[1] On appeal, he claims that (1) the evidence was insufficient to support the verdict because the state failed to prove that he had taken property from the person of another, (2) the trial court improperly failed to charge the jury as requested on the proposed lesser included offenses of larceny in the fifth degree in violation of General Statutes § 53a-125a and larceny in the sixth degree in violation of General Statutes § 53a-125b, and (3) the trial court improperly denied him the right to confront one of the state's witnesses. We affirm the judgment of the trial court.

---

[1] General Statutes § 53a-123 (a) provides: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and: (1) The property consists of a motor vehicle, the value of which exceeds five thousand dollars, (2) the value of the property or service exceeds five thousand dollars, (3) the property, regardless of its nature or value, is taken from the person of another, (4) the property is obtained by defrauding a public community, and the value of such property is two thousand dollars or less, or (5) the property, regardless of its nature or value, is obtained by embezzlement, false pretenses or false promise and the victim of such larceny is sixty years of age or older or is blind or physically disabled, as defined in section 1-1f."

The jury reasonably could have found the following facts. On July 3, 1996, the victim, Kimberly Garrett, went to a bank in New Haven, accompanied by her children, and her sister and her sister's children, to cash a $393 check. Prior to entering the bank, Garrett was approached by the defendant, who told her that he needed her help. He said that he was from Africa and was in New Haven to collect some money because of his brother's death, but that somebody had taken his money. After stating that he could not read or write, the defendant showed her what appeared to be a bus ticket and a key. On the back of the ticket was written "$75.00" and "for a room." Garrett told him that the ticket was worthless because he could not use it to obtain a hotel room. The defendant then said that an unidentified man had told him to put his credit card and money in a locker at the train station, which the key opened. Garrett advised the defendant to get his money from the locker before the other man broke into the locker to steal the money. The defendant then asked Garrett if she would help him after she cashed her check, and she agreed to do so.

Garrett cashed her check and put the $393 in her pocket. Outside the bank, the defendant was waiting and asked Garrett to hold his "green dollars" for him because he thought that the unidentified man might rob him of his money if he took it with him to the train station. The defendant then pulled a roll of what appeared to be money from his pocket and quickly showed it to Garrett before putting it back in his pocket. He then told Garrett to put his money with hers so it would be safe. Garrett took her $393 from her pocket, and the defendant quickly put his money in a scarf, tied the scarf and laid it in Garrett's hand on top of her money. The defendant seemed nervous and kept looking around, and this caused Garrett also to look around during their encounter. He then told Garrett to hurry

and put the money back in her pocket, which she did. They arranged to meet in five minutes at a restaurant after the defendant returned from the train station. As Garrett, her sister and the children were walking toward the restaurant, Garrett decided to check on her money. She discovered that her money was gone and that all she had left was the defendant's scarf, inside of which was a $1 bill folded over cut newspaper.

Garrett and her sister took a bus to their mother's house and returned by car with Garrett's cousin, Cheryl Bell, to look for the defendant. When they could not locate him, they told police officers at the train station and at Chapel Square Mall what had happened. Shortly thereafter, Garrett saw the defendant standing on Temple Street. Garrett ran from the car to the defendant and demanded her money back.[2] The defendant said that he had come back for that purpose, but then began walking away. Bell, who had since parked her car, blocked his path and Garrett again demanded her money. The defendant then took out his wallet, quickly counted what he claimed was $393, threw it at Garrett and started running away. When Bell jumped in front of him, he pushed her into a parked car and continued to run.

Garrett then ran across the street to another bank where she found John Dattilo, a sergeant with the New Haven police department, and told him what had happened. Dattilo radioed for backup as he gave chase, and the defendant was apprehended by Officers Robert Mullins and Ann Marie Worts. Mullins patted down the defendant and found a scarf wrapped around a $1 bill folded over a bundle of cut newspaper, as well as another scarf, a wallet with miscellaneous identification cards, a claim check for a locker at the train station

---

[2] At this point, more than one hour had passed since Garrett had first met the defendant.

and some cash. Later, when Garrett checked her pocket, she discovered that she had only $293, not the $393 that the defendant claimed to have thrown at her.

## I

The defendant claims first that the state presented insufficient evidence to support the larceny conviction because it failed to prove that the property was taken from the person of another, an essential element of larceny in the second degree. He claims that Garrett was tricked out of her money and, because she did not know how it was obtained by the defendant, the state had not established that it was taken from her person. We disagree.

"The standard of review of an insufficiency claim is twofold. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Milardo*, 224 Conn. 397, 402–403, 618 A.2d 1347 (1993); *State* v. *Jarrett*, 218 Conn. 766, 770–71, 591 A.2d 1225 (1991); *State* v. *Weinberg*, 215 Conn. 231, 253, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990). . . . *State* v. *Harris*, 227 Conn. 751, 757, 631 A.2d 309 (1993). The issue is whether the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. . . . *State* v. *Adams*, [225 Conn. 270, 276, 623 A.2d 42 (1993)]. . . . *State* v. *Jones*, 37 Conn. App. 437, 449, 656 A.2d 696, cert. denied, 233 Conn. 915, 659 A.2d 186 (1995)." (Internal quotation marks omitted.) *State* v. *Scott*, 55 Conn. App. 660, 665, 740 A.2d 441 (1999). On the basis of the foregoing facts

and the inferences reasonably drawn therefrom, we conclude that there was sufficient evidence presented from which the jury reasonably could have found that the defendant took money from the person of Garrett. The defendant's claim, therefore, is without merit.

## II

The defendant next claims that the trial court improperly failed to charge the jury as requested on larceny in the fifth degree in violation of § 53a-125a and larceny in the sixth degree in violation of § 53a-125b as lesser included offenses of larceny in the second degree.[3] We disagree.

The four conditions that must be met for a defendant to be entitled to an instruction on a lesser included offense are set out in *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 914 (1980). These often repeated conditions are that (1) an appropriate instruction has been requested, (2) the greater offense, as set out in the information or the bill of particulars, could not have been committed without having first committed the lesser offense, (3) there is some evidence that justifies conviction of the lesser offense and (4) proof on the element or elements differentiating the two is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser. Id., 588.

The defendant claims that he met each of those conditions. The state claims that he has failed to meet the second and fourth conditions.

The information charged the defendant with having stolen an unspecified sum of money from the person of Garrett. Larceny in the fifth degree, in violation of § 53a-125a, requires proof of larceny of something of a

---

[3] The defendant requested a charge on larceny in the fifth degree, and the state requested a charge on larceny in the sixth degree.

value in excess of $250. Larceny in the sixth degree, in violation of § 53a-125b, requires proof of larceny of something of a value of $250 or less.

The defendant claims that because there was evidence that he had taken $393 from Garrett and returned $293 to her, he could not be found guilty as charged of larceny in the second degree, as set forth in § 53a-123 (a) (3), without first being found guilty of larceny in the sixth degree. In considering the second *Whistnant* prong, the court looks only to the information or bill of particulars and not to the evidence presented at trial. *State* v. *Rozmyslowicz*, 52 Conn. App. 149, 156, 726 A.2d 142 (1999). The information did not specify the theft of $250 or less or, indeed, any specific amount. The defendant satisfies the second *Whistnant* condition where the information alleges the theft of an unspecified sum of money.

We agree with the state, however, that the defendant did not satisfy the fourth prong of *Whistnant*. In his brief, the defendant states that there was no dispute at trial over identity or intent; only whether the larceny was accomplished by a taking from Garrett's person, a requisite element of § 53a-123 (a) (3), or through a "Michigan roll-style[4] handkerchief switch," which the defendant claims supports only a nontrespassory larceny. While it is true that in considering this claim, a court views the evidence in the light most favorable to the defendant; *State* v. *Preston*, 248 Conn. 472, 477, 728 A.2d 1087 (1999); the evidence, nevertheless, must be viewed reasonably. Id.

The element that distinguishes larceny in the second degree as charged in the information from larceny in the fifth and sixth degrees is that only larceny in the

---

[4] In his brief, the defendant claims that a "Michigan roll" is a wad of newspaper wrapped inside currency that gives the appearance of a large amount of money.

second degree requires that the theft of the property, whatever its value, must have been from the person of the victim. Our Supreme Court previously has stated that "[e]vidence [of the differentiating element] is sufficiently in dispute where it is of such a factual quality that would permit the finder of fact reasonably to find the defendant guilty on the lesser included offense." (Internal quotation marks omitted.) Id., 477–78. Moreover, "the trial court, in making its determination whether the proof is sufficiently in dispute, while it must carefully assess all the evidence whatever its source, is not required to put the case to the jury on a basis [of a lesser included offense] that essentially indulges and even encourages speculations as to [a] bizarre reconstruction [of the evidence]." (Internal quotation marks omitted.) Id., 478.

Here, the defendant did not testify and, in fact, failed to appear at his trial after the jury had been selected. In his brief, however, he suggests that the jury might have concluded from the evidence that he had used the "handkerchief switch" confidence game to substitute a "Michigan roll" of cut-up newspaper and, thus, flimflammed Garrett into giving him her money. There was no evidence describing this confidence game to the jurors, and it was not argued to them. Moreover, we do not agree with the defendant that proof of this element was placed sufficiently in dispute by testimony from Officer Mullins, who, reading from his report, testified that Garrett had told him that she was asked to place her money in a scarf with the defendant's money. Mullins did not say that Garrett told him that she had given her money to the defendant to put in a scarf, but rather that she was asked to put her money with the defendant's in a scarf. Garrett herself testified that she had never given the defendant her money and that the defendant had put the scarf with his money in her hand on top of her money.

On the basis of our review of the foregoing evidence, there seems to be no doubt whatsoever that the money was taken from Garrett's person by the defendant, and we do not believe that the jury reasonably could have found otherwise.

## III

Finally, the defendant claims that the trial court improperly granted the state's motion in limine to prevent him from cross-examining a witness, thereby violating his federal and state constitutional rights to confrontation and cross-examination. Because the defendant has offered no separate and independent analysis of his claim under the state constitution, we confine our analysis to the United States constitution. See *State* v. *Dyson*, 238 Conn. 784, 794, 680 A.2d 1306 (1996).

In its motion, the state requested a ruling that the defendant be prohibited from eliciting any evidence pertaining to Bell's participation in an accelerated rehabilitation program and any evidence relative to a pending breach of peace charge because neither involved an offense punishable by imprisonment in excess of one year. Defense counsel opposed the motion and informed the court that his purpose was not to offer any such evidence to impeach the veracity of the witness, but to suggest possible bias, motive or interest. The court granted the motion but allowed the defendant to ask Bell whether she was expecting any leniency from the state for her testimony in the present case.

Thereafter, Bell was called as a witness and testified for the state. As indicated previously, she was not present when the money was stolen from Garrett, but went back with Garrett to the scene and was present when Garrett saw the defendant, as well as when he was apprehended.[5]

---

[5] Bell was identified in the substitute information as the victim in a charge against the defendant of assault in the third degree in violation of General

On cross-examination, the defendant elicited testimony that Bell had been in court the previous day and had spoken to an individual in the prosecutor's office. When asked why she was there, she replied that she had a court case. When asked if she had spoken to the state's attorney about that case, Bell replied that she had not. In addition, when asked whether, in return for her testimony, she had received a favorable outcome on her court case, she said that she had not.

Thereafter, Peter Fradiani, a court services clerk, was called as a witness by the defense. Outside the jury's presence, he testified that Bell had appeared in the clerk's office on December 9, 1996, asking about the status of her case. Fradiani stated that he informed Bell that a rearrest had been ordered for her failure to appear, and that she could either turn herself in or file a motion to vacate the rearrest. Fradiani gave Bell a standard motion form, which she filled out. Thereafter, in accordance with standard practice, Fradiani sent a copy to the state's attorney's office and continued the motion for one week. On December 16, 1996, the motion was granted and Bell's underlying case was continued to January 14, 1997.

The defendant claims that he should have been permitted to put Fradiani's testimony before the jury because it demonstrated that Bell was untruthful when she said that she had not received a favorable outcome in the underlying case in return for her testimony in this case. We disagree for several reasons.

The case that was pending had not been disposed of, favorably or otherwise. The rearrest warrant was vacated, but there is not a scintilla of evidence suggesting that this was in any way connected to Bell's

Statutes § 53a-61 (a) (1), which resulted from the incident in which he pushed her into a car when she attempted to prevent him from running away from Garrett. The defendant was acquitted of this charge.

testimony. Moreover, the testimony suggests that standard practice was followed by the clerk's office. There also was no evidence as to any grounds given on the motion to vacate and no evidence suggesting that the state's attorney's office was in any way involved.

The sixth amendment to the United States constitution guarantees to an accused the right to confront the witnesses against him. *State* v. *Lubesky*, 195 Conn. 475, 481, 488 A.2d 1239 (1985). The primary interest thus secured is the right to cross-examination; *State* v. *Milum*, 197 Conn. 602, 608, 500 A.2d 555 (1985); an important function of which is exposure of a witness' motivation for testifying. *State* v. *Francis*, 228 Conn. 118, 123, 635 A.2d 762 (1993). The confrontation right is not absolute and is subject to reasonable limitation. *State* v. *Vitale*, 197 Conn. 396, 401, 497 A.2d 956 (1985). Under the confrontation clause, there is a minimum of cross-examination that must be accorded to the defendant into matters affecting the reliability and credibility of the state's witnesses. *State* v. *Johnson*, 21 Conn. App. 291, 294, 573 A.2d 1218 (1990). The general rule that restrictions on the scope of cross-examination are within the court's sound discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. Id. We must first determine, therefore, whether the cross-examination permitted was satisfactory under the sixth amendment and, second, whether the court abused its discretion in restricting the scope of the cross-examination. *State* v. *Castro*, 196 Conn. 421, 424–25, 493 A.2d 223 (1985). The evidence sought must be relevant; *State* v. *Johnson*, supra, 293; and reasonable limits may be imposed on cross-examination on the basis of concerns that the testimony is only marginally relevant. *State* v. *Moye*, 214 Conn. 89, 94, 570 A.2d 209 (1990).

A defendant has the right during cross-examination to place before the jury the fact that criminal charges

are pending against the state's witness; *State* v. *Ortiz*, 198 Conn. 220, 223, 502 A.2d 400 (1985); to explore whether the testimony was motivated by the hope for leniency. *State* v. *Lubesky*, supra, 195 Conn. 482. This very question was answered in the negative by Bell. The jury nevertheless had before it the information that Bell had a pending case of her own and was able to use that fact in weighing the credibility of her testimony. In addition, there is nothing in the record to show why the motion to vacate in her case was granted or that it was in any way related to Bell's testimony here. Finally, Bell was not present during the crime and, hence, was not able to offer testimony about it. Rather, she testified only as to the assault against her with which the defendant had been charged. Because the defendant was acquitted of that charge, any limitation on the right to cross-examine Bell was harmless beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.

