STATE OF CONNECTICUT *v.* RICHARD T. CARPENTER, JR.
(13630)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued December 6, 1989—decision released February 27, 1990

*John R. Williams,* for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

CALLAHAN, J. The principal issue in this appeal is whether the state presented sufficient evidence to justify a guilty verdict. The defendant Richard T. Carpenter was convicted by a jury of murder in violation of General Statutes § 53a-54a.[1] Subsequently, he filed a motion for a judgment of acquittal, which was denied, and he was sentenced by the trial court to a prison term of fifty years.

The defendant's appeal raises two issues, a substantive challenge of evidentiary insufficiency and a procedural challenge of voir dire irregularity. We find error as to the former but not as to the latter.

I

"When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); *State* v. *Ferrell,* 191 Conn.

---

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime. . . ."

37, 46, 463 A.2d 573 (1983). We then determine whether ' "the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." ' *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *State* v. *Duhan,* 194 Conn. 347, 355, 481 A.2d 48 (1984)." *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985); *State* v. *Rollinson,* 203 Conn. 641, 665–66, 526 A.2d 1283 (1987); *State* v. *Arnold,* 201 Conn. 276, 282, 514 A.2d 330 (1986). " 'In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct.' *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985), and cases there cited." *State* v. *Rollinson,* supra, 666.

The jury could reasonably have found the following facts. The victim in this case, Cassandra Demming, an eighteen month old baby, had been in the custody of the defendant and his wife since September 15, 1987, because the baby's mother was incarcerated. On December 31, 1987, the baby was suffering from a cold and diarrhea. Around noon of that day, the defendant left the baby in the care of a teenage relative and went out for the evening. The babysitter spent the night at the Carpenters' home.

The next morning, when the babysitter awoke, he heard the baby crying. He immediately went to her room and noticed that she had vomited in her crib. The baby was sick all that day, suffering from congestion and diarrhea. The babysitter stayed with the baby until some members of the Carpenter family returned to the house at approximately 4:15 p.m., January 1, 1988, New Year's Day. The defendant did not return until

around 5 p.m. Shortly thereafter, the babysitter and some other family members left. When the baby's grandfather, Norman Demming, left at approximately 6:30 p.m. the defendant was alone with the baby who was lying in her crib. At 6:42 p.m., the defendant called the fire department and reported that the baby was having difficulty breathing. When the firefighters arrived, the defendant was outside waiting for them. He directed them to the bathroom where they found the baby unconscious and covered with vomit in the bathtub. James Kenny, a Wallingford firefighter, quickly checked the baby, picked her up and started mouth to mouth resuscitation. As the firefighters were leaving, the defendant told them that the baby had fallen out of her crib.

The defendant accompanied the baby as she was transported by ambulance to Memorial Hospital in Meriden. Later, after the doctors diagnosed that the baby had a parietal skull fracture, she was transported by helicopter to Yale-New Haven Hospital and placed on a life support system. The next morning, the baby was pronounced brain dead and thereafter removed from life support. William Hellenbrand, the examining physician at Yale-New Haven Hospital, found bruises over the baby's back and her face swollen. He also testified that the skull fracture that killed the baby was caused by her being thrown physically, rather than just falling or being dropped.

The autopsy conducted by Harold Carver, deputy chief medical examiner, revealed bruised and swollen tissue around the lips and eyes, a fractured skull and five fractured ribs. Carver testified that the lethal injury to the skull was caused by a single blow of "fairly great force." The doctor opined that the injuries could have occurred when someone threw the baby onto a hard, smooth surface. He also testified that the baby's ribs were broken by a "fairly significant force" which

occurred around the same time as the skull fracture. In Carver's opinion, the ribs could have been broken either by being struck with a fist or by being shaken violently. Carver, in the course of his examination, also discovered another head injury, not related to the cause of death, that was at least six weeks old.

What transpired during the short period of time in which the defendant was left alone with the baby is unclear. The only evidence presented by the state was the varying accounts of the incident given by the defendant to the police. The defendant first told authorities that the baby had fallen from her crib and that, in taking her to the bathroom to revive her, he had accidentally hit her head against a door. Later, the defendant voluntarily went to the police station to discuss the incident. While there, he repudiated the story of striking the baby's head against a door and stated instead that he had slipped and had fallen on the baby while carrying her to the bathroom and that he had also banged her head several times while attempting to place her into the bathtub to administer first aid. After being confronted with the results of the autopsy report, the defendant ventured that he might have dropped the baby as he was attempting to place her in the tub and that he had also banged her head several times in an attempt to resuscitate her. Carver rejected these explanations given by the defendant. He testified that he could not conceive of how the injuries could have been caused accidentally in those ways.[2] The defendant did at one point in his conversations with the police, however, admit that he had thrown the baby into the bathtub out of sheer frustration. When questioned as to what may have caused the rib injuries, the defendant indicated that he might have grabbed the victim too firmly in an attempt to revive her.

---

[2] The doctor did state that the injuries could have been caused by dropping the baby from a height of six feet or more, but not from dropping her one or two feet.

The defendant argues that the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that he had the specific intent to cause death. See General Statutes § 53a-54a. While the the defendant does not challenge the state's contention that the evidence established a homicide, he asserts that it established only his culpability of the lesser included offense of manslaughter in the first degree. We agree.

It is, of course, the state's burden to prove every element of the crime beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *Anderson,* 212 Conn. 31, 36, 561 A.2d 897 (1989); *State* v. *DelVecchio,* 191 Conn. 412, 419, 464 A.2d 813 (1983). In order to be convicted under our murder statute, the defendant must possess the specific "intent to cause the death" of the victim. General Statutes § 53a-54a. To act intentionally, the defendant must have had the conscious objective to cause the death of the victim. General Statutes § 53a-3 (11); *State* v. *McClary,* 207 Conn. 233, 240, 541 A.2d 96 (1988); *State* v. *Avcollie,* 178 Conn. 450, 466, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980), aff'd, 188 Conn. 626, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983).

" 'Generally, intent can be proved only by circumstantial evidence. *State* v. *Harrison,* 178 Conn. 689, 695, 425 A.2d 111 (1979); *State* v. *Bzdyra,* 165 Conn. 400, 403, 334 A.2d 917 (1973). " 'Intent may be, and usually is, inferred from conduct. *State* v. *Cofone,* 164 Conn. 162, 164, 319 A.2d 381 [1972]; *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447 [1969]. . . . ' *State* v. *Bzdyra,* [supra]." *State* v. *Sober,* 166 Conn. 81, 92–93, 347 A.2d 61 (1974).' *State* v. *Morrill,* [193 Conn. 602, 609, 478 A.2d 994 (1984)]. ' " 'An intent to cause death may be inferred from circumstantial evidence such as the type of weapon used, the manner in which it was

used, the type of wound inflicted and the events leading to and immediately following the death.' *State* v. *Zdanis,* 182 Conn. 388, 396, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981). . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. *State* v. *Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980)." *State* v. *Martin,* 195 Conn. 166, 170, 487 A.2d 177 (1985).' *State* v. *Chace,* [199 Conn. 102, 105, 505 A.2d 712 (1986)]." *State* v. *Patterson,* 213 Conn. 708, 721–22, 570 A.2d 174 (1990).

Although ordinarily the intent of the actor is a question for the trier of fact; *State* v. *Avcollie,* supra, 466; when an element of a crime set forth in a statute is unsupported by the evidence, " 'it is error to submit it to the jury as if the evidence justified the determination of the presence of that element.' *State* v. *Rogers,* 177 Conn. 379, 382, 418 A.2d 50 (1979); *State* v. *Rose,* 169 Conn. 683, 687, 363 A.2d 1077 (1975)." *State* v. *Morrill,* supra, 608.

Construing the available evidence in the light most favorable to the state, a jury could reasonably have found that the defendant killed the baby by throwing her into the bathtub. This conclusion, standing alone, however, is insufficient to establish that the defendant had the requisite intent to cause death. The state presented no evidence of any weapon, plan or motive, nor was there any evidence connecting the defendant to a pattern of abusive behavior. Cf. *State* v. *Tucker,* 181 Conn. 406, 415, 435 A.2d 986 (1980). No evidence was presented to suggest that the defendant had caused the six week old head injury noted earlier. Further, the defendant did not attempt to flee but rather, when he realized the gravity of the situation, immediately sum-

moned medical aid for the baby. Cf. *State* v. *Martin*, supra, 173; *State* v. *D'Antuono*, 186 Conn. 414, 425, 441 A.2d 846 (1982).

The state argues, however, that the jury could reasonably have inferred an intent to cause death based upon the relative strength of the defendant as compared to the victim, the degree of force used, and the nature of the injuries inflicted. We disagree.

It is axiomatic "that any conclusion, reasonably to be drawn from the evidence, which is consistent with the innocence of the accused must prevail. *State* v. *Guilfoyle*, 109 Conn. 124, 139, 145 A. 761 [1929]." *State* v. *Foord*, 142 Conn. 285, 294, 113 A.2d 591 (1955); *State* v. *Morrill*, supra, 610. "The trier may not reach a conclusion of guilt where the facts, established by the evidence, including those reasonably and logically inferred from other proven facts, are rationally consistent with the innocence of an accused. A conclusion of guilt requires proof beyond a reasonable doubt, and proof to that extent is proof which precludes every reasonable hypothesis except that which it tends to support, and is consistent with the defendant's guilt and inconsistent with any other rational conclusion. *State* v. *Smith*, 138 Conn. 196, 200, 82 A.2d 816 [1951]." *State* v. *Foord*, supra, 295; *State* v. *Martin*, supra, 173; *State* v. *Morrill*, supra, 610–11. "Moreover, inferences which do not have a basis in facts established by the evidence cannot be drawn or relied upon to sustain a verdict." *State* v. *Jackson*, 176 Conn. 257, 264, 407 A.2d 948 (1978). The jury may not resort to speculation and conjecture. *State* v. *Saracino*, 178 Conn. 416, 419, 423 A.2d 102 (1979). If the evidence is insufficient to sustain the burden of proof beyond a reasonable doubt, the verdict must be set aside. *State* v. *Jackson*, supra, 262.

We conclude that the evidence presented by the state was simply insufficient to preclude the reasonable

hypothesis that the defendant, out of frustration, engaged in reckless conduct that caused the death of the victim. The evidence was therefore insufficient to prove beyond a reasonable doubt that the defendant had the specific intent to cause the victim's death. Accordingly, the trial court should have granted the defendant's motion for judgment of acquittal on the murder charge. *United States* v. *Neary,* 733 F.2d 210, 217 (2d Cir. 1984); Practice Book §§ 883[3] and 899.

Our conclusion, however, does not require a remand for a new trial. *State* v. *McGann,* 199 Conn. 163, 178, 506 A.2d 109 (1986). The trial court instructed the jury, inter alia, regarding the elements of the lesser included offense of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).[4] *State* v. *Rodriguez,* supra, 405–407; see *Government of Virgin Islands* v. *Soto,* 718 F.2d 72, 76–77 (3d Cir. 1983). Because the jury's verdict necessarily includes a determination that, absent a specific intent, all the elements of § 53a-55 (a) (3) have been proven beyond a reasonable doubt, the defendant would not be prejudiced by a modification of the judgment to reflect a conviction of that charge. *State* v. *Saracino,* supra, 421.

---

[3] "[Practice Book] Sec. 883. ——IN GENERAL

"Motions for a directed verdict of acquittal and for dismissal when used during the course of a trial are abolished. Motions for a judgment of acquittal shall be used in their place. After the close of the prosecution's case in chief or at the close of all the evidence, upon motion of the defendant or upon his own motion, the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged and as to any lesser included offense for which the evidence would not reasonably permit a finding of guilty. Such judgment of acquittal shall not apply to any lesser included offense for which the evidence would reasonably permit a finding of guilty."

[4] "[General Statutes] Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person. . . ."

## II

The defendant's second claim on appeal is that the trial court erred when it conducted a voir dire of a juror, excused him, and replaced him with an alternate juror. These proceedings occurred in the presence of defense counsel but in the absence of the defendant. The defendant claims, consequently, a violation of both the sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution.

The defendant did not raise this claim below and therefore seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). We recently restated the *Evans* guidelines for dealing with constitutional violations that are raised for the first time on appeal. *State* v. *Golding,* 213 Conn. 233, 239, 567 A.2d 823 (1989). In *Golding,* we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40.

It is the appellant's responsibility to provide this court with a record adequate to review his claim of error. *State* v. *Anderson,* 209 Conn. 622, 633, 553 A.2d 589 (1989); *State* v. *Crumpton,* 202 Conn. 224, 231, 520 A.2d 226 (1987). This the defendant has failed to do. On the basis of the undeveloped record in this case, it is impos-

sible to determine whether the defendant was ignorant or informed of the discussions concerning the excused juror, whether he waived his right to be present at the discussions or whether, at the time, he agreed with the decision to excuse the juror and consented to his replacement. Because of the inadequate record we will not review the defendant's claim on appeal. *State* v. *Golding,* supra, 240.

There is error, and the case is remanded to the trial court with direction to modify the judgment to reflect a conviction of manslaughter in the first degree in violation of § 53a-55 (a) (3) and to resentence the defendant in accordance with that conviction.

In this opinion PETERS, C. J., SHEA and GLASS, Js., concurred.

COVELLO, J., dissenting. It is inconceivable to me that confronted with evidence that a full grown adult has, admittedly, thrown an eighteen month old baby into an empty bath tub, that the majority would conclude that there was insufficient evidence from which the jury could infer an intent to kill the child.

Harold Carver, the deputy chief medical examiner, testified that the baby's skull was fractured by a single blow of great force. The blow was not consistent with falling on the floor or being dropped a short distance into the bathtub. Carver further testified that the magnitude of the child's injuries was consistent with her having fallen one to two stories.

The ferocity with which the baby was thrown into the bathtub caused her a fractured skull with radiating cracks, five fractured ribs, swollen tissue around the lips and eyes, a bruised lip and eyelids, a collection of blood on the right side of the head, and discoloration on the back.

"When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty . . . [w]e . . . review the evidence presented at the trial, *construing it in the light most favorable to sustaining the verdict. State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); *State* v. *Ferrell,* 191 Conn. 37, 46, 463 A.2d 573 (1983). We then determine whether ' "the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." ' *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *State* v. *Duhan,* 194 Conn. 347, 355, 481 A.2d 48 (1984)." (Emphasis added.) *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985).

With regard to the element of intent, it involves "a mental process which ordinarily can be proven only by circumstantial evidence." *State* v. *Zdanis,* 182 Conn. 388, 396, 438 A.2d 696 (1980), cert. denied, 450 U.S. 1003, 101 S. Ct. 1715, 68 L. Ed. 2d 207 (1981). "The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. *State* v. *Rodriguez,* 180 Conn. 382, 404, 429 A.2d 919 (1980)." *State* v. *Martin,* 195 Conn. 166, 170, 487 A.2d 177 (1985)

"The intent of the actor is a question for the trier of fact, and the conclusion drawn by the trier in this regard should stand unless it is an unreasonable one." *State* v. *Holley,* 174 Conn. 22, 26, 381 A.2d 539 (1977). Despite the majority's concession that this is the state of the law, and despite the fact that the jury was instructed to consider the lesser included offense of manslaughter in the first degree, this important fac-

tual conclusion has been here struck down based upon the majority's conclusion that the evidence was insufficient.

" '[T]he requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition.'(Citations omitted.) *State* v. *Foord,* [142 Conn. 285, 294–95, 113 A.2d 591 (1955)]; see *State* v. *Payne,* 186 Conn. 179, 184, 440 A.2d 280 (1982). 'Emphasis needs to be placed on the distinction between the word "reasonable" and the word "possible." . . . Proof of guilt must exclude every reasonable supposition of innocence . . . . "[A] mere 'possible hypothesis' of innocence will not suffice." ' (Citations omitted.) *State* v. *Englehart,* 158 Conn. 117, 121–22, 256 A.2d 231 (1969)." *State* v. *Morrill,* 193 Conn. 602, 611, 478 A.2d 994 (1984); see *State* v. *Foord,* supra, 295; *State* v. *McDonough,* 129 Conn. 483, 485, 29 A.2d 582 (1942). "While proof of guilt must exclude every *reasonable* supposition of innocence, it need not exclude every *possible* supposition of innocence. *State* v. *Englehart,* supra, 121." (Emphasis added.) *State* v. *Little,* 194 Conn. 665, 672, 485 A.2d 913 (1984).

On the basis of the intensity of the blow, the magnitude of her injuries, and the relative size of the defendant and his eighteen month old victim, I would not disturb the jury's guilty verdict. Accordingly, I dissent.