[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Petitioner was convicted after a jury trial of the intentional murder of a young child who had been placed with him and his wife by the Connecticut Department of Children and Youth Services. On direct appeal by new counsel, that conviction was reduced to one of manslaughter in the first degree. State v. Carpenter, 214 Conn. 77 (1990). His subsequent sentence to the maximum possible term of twenty years was affirmed on a subsequent direct appeal. State v. Carpenter, 220 Conn. 169
(1991).
The evidence revealed, and as summarized by the Supreme Court in its decision on the first appeal, showed that Cassandra Demming died as a result of a traumatic injury to the head. At trial, Dr. Harold Carver, Deputy Chief Medical Examiner, testified that the autopsy
 . . . revealed bruised and swollen tissue around the lips and eyes, a fractured skull and five fractured ribs. Carver testified that the lethal injury to the skull was caused by a single blow of "fairly great force." The doctor opined that the injuries could have occurred when someone threw the baby onto a hard, smooth surface. He also testified that the baby's ribs were broken by a "fairly significant force" which occurred around the same time as the skull fracture. In Carver's opinion the ribs could have been broken either by being struck with a fist or by being shaken violently. Carver, in the course of his examination, also discovered another head injury, not related to the cause of death, that was at least six weeks old.
CT Page 7031
State v. Carpenter, 214 Conn. 77, 80-81 (1990). Dr. Carver testified further that the severity of the skull fracture was consistent with being dropped from a second-story window, or having been in a car crash. He also stated that in all other respects, the child appeared healthy and showed no signs of malnutrition. Petitioner explained to the police that the infant had been ill and he had found her not breathing; he maintained that the injuries had been inflicted while he was engaged in a panicked attempt to revive her. His description of the exact circumstances varied.
 Richard Carpenter first told authorities that the baby had fallen from her crib and that, in taking her to the bathroom to revive her, he had accidentally hit her head against a door. Later, the defendant voluntarily went to the police station to discuss the incident. While there, he repudiated the story of striking the baby's head against a door and stated instead that he had slipped and had fallen on the baby while carrying her to the bathroom and that he had also banged her head several times while attempting to place her into the bathtub to administer first aid. After being confronted with the results of the autopsy report the defendant ventured that he might have dropped the baby as he was attempting to place her in the tub and that he had also banged her head several times in an attempt to resuscitate her.
Id., at 81. Dr. Carver rejected these explanations, and "testified that he could not conceive of how the injuries could have been caused accidentally in those ways." Id.
Presently before the court is the petitioner's application for a writ of habeas corpus wherein he, at the habeas trial, has narrowed his claim to the contentions that a privately-retained attorney failed to provide that minimal level of competent representation necessary to comply with the Sixth Amendment's guarantee of effective assistance of counsel in three interrelated respects: (a) he failed to conduct a proper pre-trial factual investigation; (b) he failed to seek by motion the disclosure of records in the possession of other state agencies which would have substantially aided his defense; and (c) he failed to request jury instructions on lesser included offenses. CT Page 7032
The Petitioner was represented at trial by Attorney Thomas Flynn. Flynn testified that he was admitted to the bar in 1979, and was in practice with Attorney Gerald Farrell's office from 1981 to 1990 before starting his own firm. During that time, he tried at least one dozen criminal cases to conclusion, and assisted Attorney Farrell in trying at least three murder cases prior to the petitioner's. Mr. Flynn filed no pre-trial motions of any kind. He was not given complete access to the prosecution file. Apparently, he was permitted to see only the autopsy report and certain police reports. He knew that Cassandra Demming was a state ward, but made no effort to gain access to state or other files concerning her. The evidence presented to the habeas court shows that DCYS and other records concerning Cassandra could have been obtained either by filing appropriate discovery motions or by conducting a direct and independent investigation. The case worker from DCYS, Pamela McCarthy, testified that she would have provided defense counsel with all the information she had on Cassandra had she been contacted by him or by his representative.
But, according to Attorney Flynn, both the petitioner and his wife warned him prior to trial that they suspected DCYS records contained damaging information. In fact, DCYS records introduced at the habeas trial contain a report dated January 26, 1988, less than a month after the child's death, documenting injuries including "a swollen head," "black eyes" and "a bloody nose and a split lip," which Cassandra received at various times when alone with the petitioner. Ms. McCarthy stated in that report that ". . . I believed that Rick [the petitioner] systematically beat this child to death right under everyone's nose."
Flynn testified that he deliberately chose not to make any effort to determine what was contained in the DCYS records because he was afraid it would reflect unfavorably upon the petitioner. The evidence adduced bears out the wisdom of that decision. In this court's opinion, the DCYS records and the testimony of Ms. McCarthy would not have materially benefitted [benefited] the claim of the defense that Cassandra's death was accidental.
 While it is incumbent on a trial counsel to conduct a prompt investigation of the case and "explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction"; id. n. 3; counsel need not track down each and every lead or "`personally investigate every evidentiary possibility before choosing a defense and CT Page 7033 developing it.' Sullivan v. Fairman, [819 F.2d 1382, 1392 (7th Cir. 1987)]." Montgomery v. Petersen, 846 F.2d 407, 413
(7th Cir. 1988).
Ostolaza v. Warden, 26 Conn. App. 758, 765 (1992). "The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of an attorney when he was conducting it." State v. Talton, 197 Conn. 280, 297-8 (1985). Furthermore, it should be noted that "[t]he reasonableness of an attorney's investigative decisions often depends critically on the information supplied by his client." Williams v. Warden,217 Conn. 419, 426 (1991). In light of the more credible evidence presented to the habeas trial court, it cannot be said that Flynn's actions with respect to investigation were unreasonable.
Attorney Flynn testified that he received the statements of: (a) fireman Kenny and Norman Demming at the probable cause hearing; (b) the defendant prior to trial; and (c) the emergency room nurse and (d) Karen Appell at time of trial. In addition, the state had turned over the police and autopsy reports at the probable cause hearing. He examined the autopsy photos and testified as to meeting with the petitioner and family members at various times in order to prepare for the trial. Attorney Flynn also contacted, among others, pathologists Dr. G. J. Walker-Smith of Yale and Dr. Allen Green of East Meadow, New York, as possible defense experts. However, their conclusions supported those of Dr. Carver and they were not called at trial. Hence, the petitioner has failed to sustain his burden of proof with respect to the claim of failure to investigate.
We turn now to the Petitioner's claim that his attorney rendered ineffective assistance because he failed to request the court to instruct the jury on lesser included offenses to murder, including manslaughter and criminally negligent homicide.
 A majority of jurisdictions addressing the issue have held that counsel's failure to request a lesser included offense instruction does not necessarily deprive a defendant of reasonably effective assistance of counsel. See, e.g. Kubat v. Thieret, 867 F.2d 351, 364-65
(7th Cir. 1989); United States v. Hall, 843 F.2d 408, 413 (10th Cir. 1988); Woratzeck v. Rickets, 820 F.2d 1450, 1455
(9th Cir. 1987); Pride v. State, CT Page 7034 285 Ark. 89, 91, 684 S.W.2d 819 (1985); Young v. State, 482 N.E.2d 246, 251
(Ind. 1985); Morgan v. State, 384 N.W.2d 458, 460-61 (Minn. 1986), Codianna v. Morris, 660 P.2d 1101, 1113 (Utah 1983). It may be sound trial strategy not to request a lesser included offense instruction, hoping that the jury will simply return a not guilty verdict. See, e.g., State v. Asherman, 193 Conn. 695, 729, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S.Ct. 1749, 84 L.Ed.2d 814 (1985) (defendant objected to trial court charging the jury on lesser included offense).
Fair v. Warden, 211 Conn. 398, 404 (1989); Chase v. Bronson,19 Conn. App. 674, 682-3 (1989).
Attorney Flynn testified that the theory of the defense was that there was insufficient evidence of intent to kill the child. To this end, Flynn testified that the strategy was to show how the petitioner not only contacted the E.M.T.'s and accompanied the child to the hospital, but also how he cooperated with the police in their investigation. Thus, "the petitioner has failed to demonstrate that counsel's failure to request a jury instruction on manslaughter in the second degree was anything other than a considered choice among various reasonable trial strategies." Chase v. Bronson, 19 Conn. App. at 683.
Under the two-pronged test set forth in Strickland v. Washington, 104 S.Ct. 2052 (1984) not only must the petitioner prove that his attorney rendered ineffective assistance but also that there is a reasonable probability that but for counsel's errors, a more favorable result would have been realized.
Even if this court were to conclude that Flynn's failure to request a charge on lesser included offenses fell below an objective standard of reasonably competent representation in a criminal case, the Petitioner has failed to show that it is more probable than not that the ultimate result would have been more favorable.
Accordingly, the petition for a writ of habeas corpus is denied.
BY THE COURT, SCHEINBLUM, J. CT Page 7035