# RICHARD T. CARPENTER, JR. *v.* COMMISSIONER OF CORRECTION
## (SC 18197)

Rogers, C. J., and Katz, Palmer, Zarella and Schaller, Js.

Argued October 22, 2008—officially released January 13, 2009

*Temmy Ann Pieszak*, chief of habeas corpus services, for the appellant (petitioner).

*Mitchell S. Brody,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Linda Howe,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

KATZ, J. The petitioner, Richard T. Carpenter, Jr., appeals from the judgment of the habeas court denying his second petition for a writ of habeas corpus, which challenges his conviction of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3),[1] as ordered in this court's judgment in *State* v. *Carpenter,* 214 Conn. 77, 570 A.2d 203 (1990) (*Carpenter I*), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992). In *Carpenter I,* this court concluded that there was insufficient evidence of intent to kill, and therefore reversed the petitioner's conviction of murder in violation of General Statutes § 53a-54a,[2] but directed the trial court to modify the judgment to reflect a conviction of manslaughter in the first degree. Id., 85; see General Statutes § 53a-45 (c).[3] The dispositive issue in this appeal is whether the habeas court properly rejected the petitioner's claim that he had been deprived of effective assistance of counsel in *Carpenter I* because his appellate counsel had failed to challenge the basis of this court's remand order and thereby pro-

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . . "

[3] General Statutes § 53a-45 (c) provides: "The court or jury before which any person indicted for murder or held to answer for murder after a hearing conducted in accordance with the provisions of section 54-46a is tried may find such person guilty of homicide in a lesser degree than that charged."

tect the petitioner's right to a jury finding on reckless-ness, an essential element of manslaughter in the first degree under § 53a-55 (a) (3). We conclude that, because manslaughter in the first degree is deemed a lesser included offense of murder under our case law, such that the jury necessarily found the petitioner guilty of all the requisite elements of manslaughter under § 53a-55 (a) (3) when finding the petitioner guilty of murder, the performance of the petitioner's appellate counsel was not deficient. Accordingly, we affirm the judgment of the habeas court.

This court's opinion in *Carpenter I* sets forth the following undisputed facts relating to the petitioner's conviction. The petitioner was charged with murder after an eighteen month old baby in his care died as a result of injuries inflicted by the petitioner. *Carpenter I*, supra, 214 Conn. 79–80. "The autopsy conducted by Harold Carver, deputy chief medical examiner, revealed bruised and swollen tissue around the lips and eyes, a fractured skull and five fractured ribs. Carver testified that the lethal injury to the skull was caused by a single blow of fairly great force. [He] opined that the injuries could have occurred when someone threw the baby onto a hard, smooth surface. He also testified that the baby's ribs were broken by a fairly significant force which occurred around the same time as the skull fracture. . . .

"The only evidence presented by the state was the varying accounts of the incident given by the [petitioner] to the police. The [petitioner] first told authorities that the baby had fallen from her crib and that, in taking her to the bathroom to revive her, he had accidentally hit her head against a door. Later, the [petitioner] voluntarily went to the police station to discuss the incident. While there, he repudiated the story of striking the baby's head against a door and stated instead that he had slipped and had fallen on the baby

while carrying her to the bathroom and that he had also banged her head several times while attempting to place her into the bathtub to administer first aid. After being confronted with the results of the autopsy report, the [petitioner] ventured that he might have dropped the baby as he was attempting to place her in the tub and that he had also banged her head several times in an attempt to resuscitate her. Carver rejected these explanations given by the [petitioner]. He testified that he could not conceive of how the injuries could have been caused accidentally in those ways. The [petitioner] did at one point in his conversations with the police, however, admit that he had thrown the baby into the bathtub out of sheer frustration. When questioned as to what may have caused the rib injuries, the [petitioner] indicated that he might have grabbed the victim too firmly in an attempt to revive her." (Internal quotation marks omitted.) Id., 80–81. The jury returned a guilty verdict on the charge of murder, and the trial court sentenced the petitioner to a term of fifty years imprisonment in accordance with the judgment, from which the petitioner appealed. Id., 78.

On direct appeal, this court concluded that there was insufficient evidence to prove intent to kill, an essential element of murder. Id., 82. The court cited the absence of evidence of a motive, plan or pattern of abusive behavior and the fact that the petitioner had not fled, but had summoned medical aid. Id., 83–84. The court reasoned "that any conclusion, reasonably to be drawn from the evidence, which is consistent with the innocence of the accused must prevail. . . . [T]he evidence presented by the state was simply insufficient to preclude the reasonable hypothesis that the [petitioner], out of frustration, engaged in reckless conduct that caused the death of the victim. The evidence was therefore insufficient to prove beyond a reasonable doubt that the [petitioner] had the specific intent to cause the

victim's death."[4] (Citations omitted; internal quotation marks omitted.) Id., 84–85.

We concluded, however, that a remand for a new trial was not required. "The trial court instructed the jury, inter alia, regarding the elements of the lesser included offense of manslaughter in the first degree . . . . Because the jury's verdict necessarily includes a determination that absent a specific intent, all the elements of § 53a-55 (a) (3) have been proven beyond a reasonable doubt, the [petitioner] would not be prejudiced by modification of the judgment to reflect a conviction on that charge." (Citations omitted.) Id., 85. Accordingly, the court remanded the case to the trial court with direction to modify the judgment to a conviction of manslaughter in the first degree, without objection from the petitioner. Id., 87. On remand, the trial court sentenced the petitioner to a twenty year term of imprisonment for his manslaughter conviction.

The petitioner thereafter commenced this habeas action.[5] This court's opinion in the petitioner's first

---

[4] In *State* v. *Sivri*, 231 Conn. 115, 131–37, 646 A.2d 169 (1994), this court indirectly acknowledged that our decision in *Carpenter I* had misapplied the standard for reviewing a jury verdict of guilty. See id., 135 ("[T]he *Carpenter [I]* principles have their primary operation as rules of law for the guidance of the fact finder, rather than for the guidance of appellate courts in reviewing the sufficiency of evidence regarding the fact finder's verdict. . . . The appellate court's first task, in responding to a claim of evidentiary insufficiency, is to . . . view all of the evidence, and the reasonable inferences drawable therefrom, in favor of the jury's verdict. We then determine the sum of that evidence and the inferences, and for purposes of analysis, we assume that the facts established by that sum are true. If those facts, taken as true, are sufficient to have met the state's burden of proving all of the elements of the crime charged beyond a reasonable doubt, the verdict must stand."). Although it plays no role in our decision in this habeas appeal, we note that the petitioner undoubtedly benefited from our misapplication of the standard of review to his claim that there was insufficient evidence to sustain his murder conviction.

[5] Before commencing the present action, the petitioner had brought an unsuccessful petition for a writ of habeas corpus alleging ineffective assistance of *trial* counsel. See *Carpenter* v. *Meachum*, 229 Conn. 193, 640 A.2d 591 (1994).

appeal of this habeas petition, *Carpenter* v. *Commissioner of Correction*, 274 Conn. 834, 878 A.2d 1088 (2005) (*Carpenter II*), sets forth the following procedural history that precedes the present appeal. "[T]he petitioner filed an amended petition for a writ of habeas corpus in which he alleged that the jury never considered the mental state element of recklessness necessary to prove manslaughter in the first degree [under §] 53a-55 (a) (3) of which he stands convicted. He therefore claim[ed] that his conviction was unlawful [because] . . . [the] Supreme Court is without authority to direct a conviction on an offense never considered by the jury, and the manslaughter conviction deprived him of due process under the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut. . . .

"The [respondent, the commissioner of correction (commissioner)] filed a return . . . in which [the commissioner] claimed that the petitioner did not state a claim upon which the petition could be granted because the habeas court had no authority to reverse this court's decision in [*Carpenter I*], supra, 214 Conn. 77. In support of that argument, the commissioner cited this court's decision in *Summerville* v. *Warden*, 229 Conn. 397, 419, 641 A.2d 1356 (1994), in which the court stated that a habeas proceeding was not designed to relitigate issues already decided on appeal. The commissioner also argued that the petitioner was procedurally defaulted from bringing the claims alleged in the petition because, even if the claims had not been litigated in [*Carpenter I*], supra, 77, the petitioner had not shown cause and prejudice as to why they had not been raised on direct appeal. When the commissioner filed the return, she also filed a motion to dismiss the petition, in which she made the same claims." (Citation omitted; internal quotation marks omitted.) *Carpenter II*, supra, 274 Conn. 836–37.

"The habeas court [*Graziani, J.*] concluded that it had no authority to review the [this court's] decision [in *Carpenter I*] . . . . Consequently, [the habeas court concluded that] the amended petition fail[ed] both to invoke [the] court's jurisdiction and to state a claim upon which habeas corpus relief can be granted. Accordingly, it rendered judgment of dismissal.

"On appeal to the Appellate Court, the petitioner claimed that he was entitled to a hearing under this court's decision in *Mercer* v. *Commissioner of Correction*, 230 Conn. 88, 644 A.2d 340 (1994) . . . . The commissioner countered that an evidentiary hearing was not required because the habeas court had no authority to review this court's decision in [*Carpenter I*], supra, 214 Conn. 77, and because the [habeas] court was not faced with any disputed issues of fact regarding its authority. *Carpenter* v. *Commissioner of Correction*, [81 Conn. App. 203, 209, 840 A.2d 1 (2004), rev'd in part, 274 Conn. 834, 878 A.2d 1088 (2005)]. The Appellate Court agreed with the commissioner that the habeas court could not review this court's decision; id.; but also concluded that the petitioner was entitled to an evidentiary hearing under *Mercer* because the petition implicitly had raised a claim of ineffective assistance of counsel, which was premised on legal grounds that had not been raised in the first petition. Id., 210–12. Accordingly, the Appellate Court reversed the judgment of the habeas court dismissing the petition and remanded the case to the habeas court for an evidentiary hearing. Id., 212. Thereafter, this court granted the commissioner's petition for certification to appeal limited to the following question: Did the Appellate Court properly conclude that the petitioner was entitled to an evidentiary hearing on his petition for habeas corpus? *Carpenter* v. *Commissioner of Correction*, [268 Conn. 917, 847 A.2d 310 (2004)]." (Citations omitted;

internal quotation marks omitted.) *Carpenter II*, supra, 274 Conn. 839–40.

In *Carpenter II*, this court concluded "that, under the circumstances of this case, the petitioner adequately pleaded ineffective assistance of counsel and, therefore, that the Appellate Court properly remanded the case to the habeas court for an evidentiary hearing." Id., 841. Specifically, "[w]e recognize[d] that the line separating habeas claims arising out of appellate counsel's failure to challenge an impermissible action by the trial court from habeas cases in which ineffective assistance of counsel, in and of itself, has resulted in a constitutional violation may be somewhat blurred. . . . Under the circumstances of this case . . . where the commissioner never argued to the habeas court that it should disregard the [ineffective assistance of appellate counsel] claim because it was raised in the reply, and where the habeas court recognized the claim in its decision, a determination that the claim was pleaded adequately will not result in any unfair surprise or prejudice to the commissioner." Id., 845–46.

The record reflects the following additional procedural history. In accordance with the judgment in *Carpenter II*, a second habeas court, *Fuger, J.*, thereafter conducted an evidentiary hearing, at which the petitioner's criminal appellate counsel, John Williams, testified. That habeas court subsequently issued a memorandum of decision denying the petition. The court first determined that, "by implication, if not directly, the Supreme Court has determined that there was sufficient evidence that merited conviction for manslaughter by recklessness. It is clear that manslaughter by recklessness is, in fact, a lesser included offense of murder." The second habeas court therefore concluded that it "lack[ed] the jurisdiction and authority to set aside an order of the Supreme Court." Turning to the question of ineffective assistance of counsel, the habeas court applied the two

part test under *Strickland* v. *Washington*, 466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and first concluded that Williams had not rendered deficient performance. It agreed with Williams that "he had achieved a major victory on behalf of [the petitioner by reducing his conviction of murder and attendant sentence of fifty years to a conviction of manslaughter with a twenty year sentence]. To argue an esoteric point of law in the hope of achieving a little more may have put at risk the entire victory . . . ." The second habeas court further found that, even if it were to find deficient performance, the petitioner had not demonstrated prejudice as required under the second part of the *Strickland* test. The court, however, granted the petitioner's petition for certification to appeal from the judgment so that this court possibly could decide to reconsider its order to modify the judgment of conviction. This second appeal on this habeas petition followed.[6]

In his brief to this court, the petitioner contends that, as a factual matter, the verdict in *Carpenter I* did not include jury findings on all essential elements of manslaughter. In light of that factual premise, he contends that: (1) the second habeas court improperly concluded that it lacked jurisdiction to decide the merits of the petitioner's claim that his conviction for manslaughter in the first degree was rendered in violation of his federal constitutional right to have a jury determine whether each essential element of that manslaughter offense was proven beyond a reasonable doubt; and

---

[6] The petitioner appealed from the second habeas court's judgment to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We note that, subsequent to the habeas court's judgment, the petitioner completed his term of imprisonment. His appeal is not moot, however, because he was in custody at the time he filed the habeas petition and there are collateral consequences attendant to his conviction. See *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 530, 876 A.2d 1178 (2005); *Herbert* v. *Manson*, 199 Conn. 143, 143 n.1, 506 A.2d 98 (1986).

(2) the second habeas court improperly based its decision on his ineffective assistance of counsel claim on a mistaken view of the law of lesser included offenses. For the following reasons, we conclude that the petitioner's second claim presents the dispositive issue in this appeal.

As we previously have noted, in *Carpenter II*, supra, 274 Conn. 841, we held that the Appellate Court properly had remanded the case to the habeas court for an evidentiary hearing because, "under the circumstances of this case, the petitioner adequately pleaded ineffective assistance of counsel . . . ." We did not consider, and therefore left standing by virtue of our affirmance of that court's judgment, the Appellate Court's holding that the habeas court properly could not review this court's decision in *Carpenter I*, except to the extent that such a review was necessary to resolution of the petitioner's ineffective assistance of counsel claim. Therefore, the petitioner's first claim is outside the scope of our remand order. Moreover, the petitioner's factual predicate to both claims, that the jury did not make the necessary findings of recklessness to support his manslaughter conviction, essentially is subsumed within our analysis of his claim that he was deprived of effective assistance of counsel as a result of his counsel's mistaken view of the law of lesser included offenses. With this narrowed lens, we turn to the petitioner's ineffective assistance of counsel claim.

The legal parameters for our review of a claim of ineffective assistance of counsel are well settled. "When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. *Strickland* v. *Washington*, [supra, 466 U.S. 698]. As such, that question requires

plenary review by this court unfettered by the clearly erroneous standard. . . .

"[Under] the familiar two part test for ineffective assistance of counsel enunciated by the United States Supreme Court in [*Strickland*] . . . the . . . [c]ourt determined that the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. [Id.], 688, 694. The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the [s]ixth [a]mendment. . . .

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . [J]udicial scrutiny of counsel's performance must be highly deferential. . . . [Moreover], a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." (Citations omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 288 Conn. 53, 62–63, 951 A.2d 520 (2008).

The petitioner claims that, because of Williams' unreasonable mistake of law, he was deprived of his

right to a jury trial on reckless manslaughter in the first degree. Specifically, the petitioner contends that Williams failed to object to this court's remand order on the basis of an unreasonable belief that the jury necessarily had found all of the elements of reckless manslaughter in the first degree when returning a verdict of guilty on the murder charge.[7] He asserts that "reasonably competent counsel would have realized that, as a factual matter, it was not necessary to prove recklessness (i.e., awareness of and conscious disregard of a substantial and unjustifiable risk) in order to prove intent to kill," and that recklessness and intent are mutually exclusive states of mind under our case law. Accordingly, the petitioner posits that it would violate the rule set forth in *Apprendi* v. *New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to convict him of manslaughter in the first degree under § 53a-55 (a) (3) without a jury finding of the element of recklessness. See id. ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

---

[7] Although the petitioner is quite clear as to what he believes was unreasonable judgment on Williams' part as to the proper view of the law, he does not expressly "identify the acts or omissions [by Williams] that are alleged not to have been the result of reasonable professional judgment." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 288 Conn. 63. In his brief addressing his second claim, the petitioner recounts Williams' testimony before the second habeas court as to why Williams believed it would have been a bad idea to move for reconsideration of this court's order in *Carpenter I*. The petitioner also recounts Williams' testimony stating that he was happy when, at oral argument before this court in *Carpenter I*, members of this court indicated that we might be inclined to entertain a conviction of manslaughter. Elsewhere in his brief, the petitioner notes that Williams had agreed at that oral argument both that there was sufficient evidence to prove reckless manslaughter in the first degree and that it would be within this court's power to remand the case with direction to render a judgment of guilty on that lesser included offense. Therefore, we presume that the petitioner contends that Williams should have challenged this court's view of the law and the facts of the case at oral argument and/or should have moved for reconsideration of the judgment.

beyond a reasonable doubt"). We conclude that Williams did not render ineffective assistance of counsel because manslaughter in the first degree is a lesser included offense of murder as a matter of law.

In *State* v. *Grant*, 177 Conn. 140, 147, 411 A.2d 917 (1979), this court first adopted the rule that it "may order the modification of an erroneous judgment where the evidence is insufficient to support an element of the offense stated in the verdict but where the evidence presented is sufficient to sustain a conviction for a lesser included offense." Although the court recognized that "[t]his power should be exercised only when it is clear that no undue prejudice will result to the accused"; (internal quotation marks omitted) id., 148; it determined that no such prejudice occurs if "[t]he defendant has had a fair adjudication of guilt on all the elements of the crime . . . ." Id. A defendant is deemed to have such a fair adjudication when the crime is a lesser included offense of the crime charged, and, under the circumstances of the case, the jury "could have explicitly returned [a verdict of guilty on the lesser included offense and] the defendant was aware of his potential liability for this crime." Id., 149; accord *State* v. *Saracino*, 178 Conn. 416, 421, 423 A.2d 102 (1979).

For many years, this court strictly adhered to the following rule to determine whether one offense was a lesser included offense of another: "The test for determining whether one violation is a lesser included offense in another violation is whether it is possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser. If it is possible, then the lesser violation is not an included crime." *State* v. *Brown*, 163 Conn. 52, 61–62, 301 A.2d 547 (1972); see, e.g., *State* v. *McGann*, 199 Conn. 163, 178–79, 506 A.2d 109 (1986) (murder is lesser included offense of capital felony of murder for hire with element of hiring only

additional element of latter); *State* v. *Grant*, supra, 177 Conn. 146–47 (attempted burglary in third degree is lesser included offense of attempted burglary in first degree because latter requires only additional element of dangerous instrument; "[a]s a lesser included offense, burglary in the third degree does not require proof of any element which is not required to commit the greater offense of burglary in the first degree"). Thus, in *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), this court concluded that a jury instruction allowing consideration of a lesser offense is proper "if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser."

In *State* v. *Rodriguez*, 180 Conn. 382, 407, 429 A.2d 919 (1980), this court considered whether homicides requiring a less culpable state of mind than murder may be lesser included offenses of the crime of murder for purposes of the second prong of *Whistnant*. In *Rodriguez*, the defendant had claimed that, "because he was charged with murder, a crime requiring the element of specific intent to cause the death of another, the court's charge on manslaughter in the first and second degrees and criminally negligent homicide, which do not require the same state of mind, violated his right to be informed of the crime he is alleged to have committed." Id., 399. We disagreed.

The court in *Rodriguez* first examined the homicide scheme prior to the enactment of the Penal Code in 1969. It noted that, "under the homicide statutes in effect prior to 1969, a person indicted for murder could be found guilty of a wilful, deliberate and premeditated killing, or a killing perpetrated in the course of committing certain enumerated crimes (murder in the first degree, [General Statutes (Rev. to 1968)] § 53-9); homicide committed with malice aforethought (murder in the second degree, [General Statutes (Rev. to 1968)] § 53-9) . . . homicide without malice aforethought (manslaughter, [General Statutes (Rev. to 1968)] § 53-13) . . . or, where applicable, homicide committed under circumstances set forth in [General Statutes (Rev. to 1968) § 53-17] (wilful misconduct or gross negligence). In the category of manslaughter under § 53-13 was included the intentional infliction of a wound from which death ensued . . . and engaging in an activity in a reckless manner or with wanton disregard for the safety of others which causes death. . . . As these categories disclose, the state of mind of the actor varied according to the degree or grade of homicide involved. Such gradations of the mental state went along the single spectrum of criminal culpability in our former statutory scheme of homicide. It is therefore difficult to understand how the defendant can argue that the statutory language permitting a jury to find a defendant indicted for murder guilty of homicide in a lesser degree than that charged was constitutionally permissible prior to the enactment of the Penal Code in 1969, but not subsequent to that time. In both statutory schemes, the state of mind required for a homicide of a lesser degree than that charged is different from the state of mind for the offense charged." (Citations omitted; internal quotation marks omitted.) Id., 401–402.

The court in *Rodriguez* turned next to the homicide scheme as it then existed, which included reckless man-

slaughter in the first degree as presently defined under § 53a-55 (a) (3), and queried: "Because each of these homicide statutes requires a different state of mind of the actor than that required for murder, the question is whether one homicide offense can be lesser than and included within another such offense where the state of mind required for the greater is more culpable than the state of mind required for the lesser." Id., 403. The court answered that question in the affirmative. "Permitting the jury to find the defendant guilty of a lesser charge of homicide than that charged, where the evidence supports such a finding, does not violate the defendant's sixth amendment right to notice. By the charge on the greater offense of murder, the defendant is put on notice that he will be put on trial for his action in causing the death of another person. Thus, having been given notice of the most serious degree of culpable intent by the murder indictment, he is implicitly given notice of those lesser included homicides that require a less serious degree of culpable intent." Id., 405. Accordingly, the court in *Rodriguez* concluded, with respect to homicide offenses: "For purposes of the second condition of *Whistnant* . . . an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense." Id., 407.

Thereafter, in *State* v. *Maselli*, 182 Conn. 66, 68, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981), this court rejected a claim that the jury improperly had been instructed on the charges of manslaughter in the first degree under § 53a-55 (a) (1) and (3) because those offenses were not included in the indictment, which alleged only murder. The court concluded: "[A]n intention to cause 'serious physical injury' would be encompassed by the more culpable mental state of intending to inflict the ultimate

damage of death upon a person. . . . [W]e have declared in the context of homicide 'that an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense.' *State* v. *Rodriguez*, supra, [180 Conn. 407]. Manslaughter in the first degree as defined in subsection [a] (1) of § 53a-55 is a lesser included offense in a murder indictment.

"The defendant's contention that manslaughter in the first degree based upon 'reckless' conduct as set forth in subsection (a) (3) of § 53a-55 is not included in a charge of murder was explicitly rejected in *State* v. *Rodriguez*, supra, [180 Conn.] 408 . . . . In view of . . . § 53a-45 (c), which allows a defendant indicted for murder to be found guilty of homicide in a lesser degree than that charged, it is clear that any lesser degree of homicide may be considered by the trier, subject to the requirements of *State* v. *Whistnant*, [supra, 179 Conn. 585], that the evidence does support a conviction of the lesser included offense and that the elements differentiating the lesser offense are sufficiently in dispute to justify finding the defendant innocent of the greater offense but guilty of the lesser. *State* v. *Rodriguez*, supra [407–408]." (Citations omitted.) *State* v. *Maselli*, supra, 72. The court later extended the rationale of *Rodriguez* to manslaughter and assault offenses. *State* v. *Smith*, 185 Conn. 63, 77, 441 A.2d 84 (1981).[8]

Undoubtedly, *Rodriguez* and its progeny did not conform to the previously established test for determining

[8] Although the petitioner contends that *Rodriguez* determined that a crime requiring a reckless state of mind may be deemed a lesser included offense of a crime requiring an intentional state of mind because § 53a-54a (c) provides notice of that possibility; see footnote 2 of this opinion; *Smith* undermines that limited view of *Rodriguez*. *Smith* extended the *Rodriguez* rationale to assault, yet there is no statute providing notice of lesser included offenses of assault.

whether a crime is a lesser included offense. Prior to *Rodriguez*, lesser included offenses strictly were limited to what the petitioner calls "building block" lesser offenses—meaning that the greater offense required all of the same elements that the lesser included offense required, plus some additional element or elements. Manslaughter in the first degree based on reckless conduct, for example, does not include the same elements as murder. As we have noted previously, murder requires an intent to cause death, and this court has concluded that intentional conduct and reckless conduct are "mutually exclusive," such that they cannot exist simultaneously with respect to the same act. *Griffin* v. *Parker*, 219 Conn. 363, 369, 593 A.2d 124 (1991); *State* v. *King*, 216 Conn. 585, 593–94, 583 A.2d 896 (1990), on appeal after remand, 218 Conn. 747, 591 A.2d 813 (1991); see *State* v. *Ruiz*, 171 Conn. 264, 271, 368 A.2d 222 (1976) ("Our [P]enal [C]ode . . . expressly defines the terms 'intentionally' and 'recklessly' in such a manner as to render them mutually exclusive. A person acts 'intentionally' when his conscious objective is to cause a specific result; [General Statutes] § 53a-3 [11]; a person acts 'recklessly' when he consciously disregards a substantial risk that a specific result will occur. General Statutes § 53a-3 [13].").

The court in *Rodriguez*, however, expressly overruled or distinguished case law that would have required the court to treat homicide in accordance with the more limited parameters of building block lesser offenses. *State* v. *Rodriguez*, supra, 180 Conn. 407; see *State* v. *Maselli*, supra, 182 Conn. 72.[9] We recognize that

[9] In *Rodriguez*, the court stated: "The defendant relies primarily upon this court's decisions in *State* v. *Troynack*, 174 Conn. 89, 95–99, 384 A.2d 326 (1977), and *State* v. *Ruiz*, [supra, 171 Conn. 269–72], for his argument that the lesser crimes involved here would not have been lesser included offenses of murder. We point out that *Ruiz* did not involve a prosecution for homicide and that in *Troynack*, which did, the court was not presented with any claim involving [murder under] . . . § 53a-45 (c). To the extent that the reasoning employed in those cases is contrary to the analysis we employ here, however,

there is some tension between *Rodriguez* and case law in which we have reversed convictions, arising out of the same act, of both a crime requiring recklessness and a crime requiring intentional conduct because of their "mutually exclusive and inconsistent state[s] of mind." (Internal quotation marks omitted.) *State* v. *Hinton*, 227 Conn. 301, 319, 630 A.2d 593 (1993), quoting *State* v. *King*, supra, 216 Conn. 594. In those cases, we held that "it is not for this court, on appeal, to make a factual determination as to the defendant's mental state at the time the alleged crime was committed. . . . The inconsistent verdicts, therefore, require that we vacate the defendant's convictions . . . and remand [the affected] counts for a new trial." (Citations omitted.) *State* v. *King*, supra, 595; *State* v. *Hinton*, supra, 321. We note, however, that the specific problem the court had identified in those cases was the *simultaneous* possession of different intents with respect to the same act. *State* v. *Hinton*, supra, 318; *State* v. *King*, supra, 593; see also *Griffin* v. *Parker*, supra, 219 Conn. 371 ("[b]ecause the defendant could not simultaneously have had mutually exclusive states of mind, there remains a question of fact as to which state of mind he did have"). Nonetheless, we also have stated that, "[a]lthough it is true . . . that intentionality and recklessness are two distinct states of mind . . . this does not mean that the same factual circumstances cannot support a jury finding of either intentionality or reck-

they are no longer controlling." *State* v. *Rodriguez*, supra, 180 Conn. 407. In *State* v. *Ruiz*, supra, 272, this court concluded that the trial court improperly had instructed the jury on first degree assault by recklessness when he had been charged with intentional first degree assault, in reliance on the "mutually exclusive" definitions of those states of mind. The defendant's conviction was not reversed, however, as the court found the instructional error harmless. In *State* v. *Troynack*, supra, 99, the court reversed a conviction of reckless manslaughter in the second degree when the defendant had been charged with manslaughter in the first degree because the former was not a true lesser included offense under the established test.

lessness." (Citation omitted.) *State* v. *Giguere*, 184 Conn. 400, 403–404, 439 A.2d 1040 (1981).

In our view, *Rodriguez* and its progeny are dispositive of the issue in this appeal. The petitioner never has claimed that this line of cases should be overruled. Nor has the petitioner ever claimed that Williams should have asserted that it was improper for the jury to have been instructed on manslaughter in the first degree under § 53a-55 (a) (3). Indeed, the facts of the case previously set forth undoubtedly provided an ample basis for such a charge to go to the jury and for a conviction on that charge. Rather, he contends that Williams should have recognized that these cases are limited to the issue of the right to fair notice and do not bear on the right to a jury trial. Although the petitioner casts his claim through the lens of the concerns raised in *Apprendi* v. *New Jersey*, supra, 530 U.S. 490, to avoid the force of *Rodriguez*, we ultimately are not persuaded. Because there is no question that *Rodriguez* is and was good law, Williams was operating under the same reasonable view of the law that this court took in *Carpenter I*. If a defendant constitutionally may be deemed to have fair notice of the possibility that he may be convicted of reckless manslaughter in the first degree when he is charged with murder, because the former is deemed a lesser included offense of the latter, and it is undisputed that the jury properly was instructed to consider the lesser included offense, then the petitioner's right to a jury finding of intent would be satisfied by virtue of its verdict of guilty on the greater offense. Therefore, Williams was not operating under an unreasonable mistake of law, and thus did not render deficient performance, by acquiescing to this court's conclusion that it properly could reverse the petitioner's murder conviction and direct the trial court to render judgment of guilty of reckless manslaughter in the first degree. Accordingly, the habeas court properly

concluded that the petitioner was not deprived of effective assistance of counsel.

The judgment is affirmed.

In this opinion the other justices concurred.